SENECA INDEPENDENT SCHOOL DISTRICT OF SEN-
ECA, Respondent, v. TRAVER, et al, Appellants.

(256 N. W. 365.)

(File No. 7597. Opinion filed September 17, 1934.)

*Stover & Jaynes,* of Watertown, for Appellants.
*Tait & Morgan,* of Gettysburg, for Respondent.

RUDOLPH, J. On July 1, 1929, the defendant Traver was appointed treasurer of the plaintiff school district. He qualified by filing a bond in the amount of $8,000 furnished by the defendant National Surety Company. The condition of the bond is as follows: "Now, therefore, If the said Leo A. Traver shall faithfully and impartially in all things, during his continuance in office, perform and discharge the duties thereof without fear, favor, fraud, deceit or oppression and render a true account of and properly apply all money and property of every kind that shall come into his hands by virtue of his holding said office * * * then this obligation to be void, otherwise to remain in full force and effect." The defendant Traver was the cashier and active manager of the Farmers' Security Bank of Seneca. This bank was designated by the board of education of the Seneca Independent School District as the depositary for the funds of the school district. The bank suspended business on October 2, 1931, at which time the defendant Traver as treasurer of the school district had on deposit in the bank $7,830.94. This action is brought against Traver and the National Surety Company to recover for the school district the amount of the deposit. Judgment was rendered against both defendants, and they have appealed.

Chapter 154, Laws of 1925, provides in section 1 for the des-

ignation of a bank as a depositary by the board of education of an independent school district. Section 2 is as follows: "Immediately upon receipt by the treasurer of a certified copy of a resolution designating a depositary or depositaries as provided for in Section 1 hereof, the treasurer shall make the deposit or deposits required by said resolution, and neither he nor the surety or sureties upon his bond shall be liable for any loss or damage to such district resulting from the failure, or from any act or omission, of said depositary or depositaries, unless the treasurer shall be an officer, agent, or employee of any such bank so selected as a depositary, and such loss or damage shall be caused, in whole or in part, by any violation of the law by said treasurer, acting in his capacity of officer, agent or employee of said bank." This statute was re-enacted in 1931 as a part of section 197, chapter 138, Laws 1931, and again in 1933 as a part of chapter 96, Laws 1933.

The bond involved in this case was executed in 1929, several years after the enactment of chapter 154, Laws of 1925, and should therefore be construed in the light of this statute. Section 7565, R. C. 1919, provides that the treasurer shall execute a bond conditioned for the faithful discharge of his duties. The law intends that the liabilty upon the official bond should be co-extensive in this respect with the liability of the officer himself. Thunder Hawk School District v. Western Surety Company, 58 S. D. 312, 235 N. W. 921, 923. This court said in the last-cited case: "* * * when a bond is executed and offered pursuant to a requirement of statute, it will be presumed that it is the intention of all parties that the obligation of the bond is to be commensurate with the requirement of the statute, neither more nor less." We are of the opinion, therefore, that construing this bond in the light of the 1925 statute there was no intention to extend the liability beyond that of the treasurer of the school district, and that the liability of the surety is commensurate with that of the treasurer, neither more nor less.

In the case of Lane Independent Consol. School District v. Endahl, 55 S. D. 73, 224 N. W. 951, 956, this court said: "To establish, in the first instance, the liability of a school treasurer and his surety codefendants, under a bond executed and conditioned as in this case, it is incumbent upon the school district to merely prove the regular receipt of school funds by the officer and his

failure to pay over or account for the same on lawful demand properly made. To successfully defend against a liability so established, prima facie, the treasurer has but to show a regular designation of a depositary of the particular funds, by the school board, his deposit therein of the funds, and the loss of the same through insolvency of the bank." It was not intended, however, to require that the treasurer should prove actual insolvency to make out his prima facie defense, but simply that he prove that the bank designated as a depositary closed and he was therefore unable to pay over the funds to the district. The last-cited case was followed by the case of Board of Education v. Whisman, 56 S. D. 472, 229 N. W. 522, wherein the rule above announced was further extended by the holding of this court that the prima facie defense having been established by proving the designation of the depositary and its closing, the plaintiff is entitled to meet this defense by showing other facts in avoidance. Under the rule announced in the cases of Independent School District v. Scott, 51 S. D. 187, 212 N. W. 863; Onida Independent School District v. Groth, 53 S. D. 458, 221 N. W. 49; Independent School District of City of Brookings v. Flittie, 54 S. D. 526, 223 N. W. 728, it is only necessary to show in avoidance of such defense that the defendant was an officer of the depositary bank, was charged with knowing of the unsoundness of the depositary, and did not communicate such information promptly to the authority designating the depositary. The above cases were all decided under facts which occurred prior to the adoption of chapter 154, Laws of 1925. It is our opinion that the 1925 law, as re-enacted in 1931 and 1933, has modified the rule announced in these three cases last above cited, to the extent that now, in addition to showing in avoidance that the school district treasurer was an officer of the depositary bank, it must be further shown that the loss suffered by the school district due to the failure of the bank "shall be caused, in whole or in part, by any violation of the law by said Treasurer, acting in his capacity of officer, agent, or employee of said bank." This view was indicated by this court in the case of Summit Independent School District v. Lien, 57 S. D. 465, 233 N. W. 643, 644, wherein it was said with reference to the 1925 law: "In this case the treasurer was the cashier of the bank and the loss of the money was brought about by the unlawful conduct of the treasurer while acting in his capacity of cashier of

the bank. Acting as cashier, he went before the school board and by false representations as to the solvency of the bank secured the designation of his bank as a depositary of the funds of the district. After securing such designation, he unlawfully received the money of the district into his insolvent bank and paid the same out to other depositors so that when, in the ordinary course of business, such money was demanded in payment of the legitimate obligations of the district, he was unable to produce or pay the same. Under the above-quoted statute, this conduct on the part of the cashier of the bank renders the surety on the school treasurer's bond liable for the loss."

It follows, therefore, that our inquiry, as now limited by the statute, is: What, if any, unlawful act of Traver, as an officer of the bank, caused the loss which the school district suffered due to the failure of the designated bank?

■ We must first determine what the statute means wherein it refers to "loss or damage to such district resulting from the failure of said depositary." The statute provides that the board shall designate a bank as a depositary for the district funds, and thereafter the treasurer must deposit the funds of the district in the designated bank. If the treasurer fails to deposit in the bank the board has designated, he may be compelled to do so under the express terms of the statute. We believe it apparent, therefore, that any money, which the school district treasurer has in his hands in excess of that which he should have disbursed on behalf of the district, is required to be kept in the designated bank, and as to such money the statute contemplates that the loss, resulting to the school district when the bank closes, is proximately caused by the closing of the bank. The only exception made by the statute is where the school treasurer is a bank officer, agent, or employee, and the loss is sustained because of some unlawful act of his acting in his capacity as such bank officer, agent, or employee. By making this one exception, the statute implies that any other act or omission of the treasurer cannot be the basis for any liability at least as to any money which the treasurer should have, and did have, on hand in the designated bank. Certainly, the money which the treasurer should have, and did have, on hand would not be lost before the bank closed. The closing of the bank would be the immediate cause of the loss, and the cause which we believe to

be within the contemplation of the statute. We conclude, therefore, that the statute must in any event mean that any money on deposit in the designated bank at the time it closed other than money that the treasurer, in the ordinary course of school business, should have disbursed for and on behalf of the designated district, was lost to the district due to the failure of the bank.

We come back now to our original inquiry, and for the present we will presume that the money Traver had on deposit at the time the bank closed was money which he should have had on hand, and not money which should have been disbursed for school district purposes. What unlawful act of Traver acting as an officer of the bank caused this loss to the school district? It is not contended that any unlawful act of Travers as an officer of the bank caused the bank to close. All that is contended is that Traver acting as an officer of the bank accepted deposits of school district funds knowing the bank to be insolvent. If the record is sufficient to establish that Traver acting as cashier of the Seneca bank acted unlawfully in accepting a deposit of school district money at a time when the bank was insolvent, and he knew the bank was insolvent, and the amount of this deposit was still in the bank when the bank closed, it is our opinion that this would be sufficient to establish liability under the statute. It was virtually so held in the case of Summit Independent School District v. Lien, supra. However, apart from that case, it seems to us that under this situation it is reasonable to say that had it not been for the unlawful act of Traver as an officer of the bank in accepting the deposit, the school district would not have sustained such loss when the bank closed.

The statute specifically provides that the act of the bank officer upon which liability may be predicated must be in "violation of the law." The only statute which makes it unlawful for an officer of a bank to receive deposits, knowing the bank to be insolvent, is section 8998, R. C. 1919. This court had occasion in the case of State v. Syverson, 39 S. D. 638, 166 N. W. 157, to construe this statute and therein held that it was no violation of the statute for an officer to receive deposits knowing the bank to be constructively insolvent. It was held in that case that, in order to prove a violation of the statute, actual insolvency of the bank at the time the deposit was received must be established. We know

of no law that would be violated by Traver, therefore, when he received a deposit of school district money unless it was established that at the time he received such deposit the bank was actually insolvent. As stated in the Syverson Case, supra, "actual insolvency" means that the actual cash market value of all the bank's assets is insufficient to pay all debts or liabilities. There was no attempt to prove actual insolvency in this case, and the judgment cannot be sustained upon the theory that some unlawful act of Traver acting in his capacity as a bank officer caused the loss to the district. The trial court found that the bank had been insolvent for more than seven months before it closed, but there are no facts proving actual insolvency upon which to base this finding. The most that can be said of the finding, in the light of the facts, it that it is a finding to the effect that the bank was constructively insolvent, and as pointed out above such a finding cannot support the judgment.

Respondent makes the contention, as to a part of the money Traver had on hand at the time the bank closed, that it should have been disbursed by Traver to pay certain outstanding warrants and that had he not been negligent in failing to pay these warrants, the money would not have been lost to the district when the bank closed.

 This contention of respondent raises the question of whether or not the statute has any application to moneys which have come into the hands of the treasurer, but which he has negligently or willfully failed to disburse. It is our conclusion that the statute has no application to such moneys. The apparent purpose of the Legislature in enacting the statute was to protect school district treasurers, who were also officers of depositary banks, from liability for moneys which came into the hands of the treasurer, and which it was required that he keep in order that the school district might successfully conduct its business. We do not believe that it was intended by the enactment of this law that a school district treasurer who was also an officer of a depositary bank could negligently or willfully fail to disburse school district funds, but retain them in the bank in which he was an officer, and then claim protection under the statute. The statute, we believe, was intended to protect the treasurer and bank officer for such moneys as he must deposit in the designated bank, and which in the ordinary

course of business he should and did have on hand in the designated bank at the time it closed.

The record discloses that there was approximately $5,000 in registered school district warrants outstanding which had been outstanding since the year 1929, and that these warrants had not been called by Traver, although he always had money on hand in an amount more than sufficient to take them up. The record, however, fails to disclose that the money on hand was "applicable to the payment of warrants which have been * * * registered." Section 111, chapter 138, Laws 1931, provides "that whenever there shall come into the hands of the Treasurer, or subject to his order, money applicable to the payment of any warrant which has been so presented and registered," the treasurer shall notify the holder of such warrant in writing, etc. The record discloses that all of the money of the school district was, as testified to by Traver, kept in one "jackpot." In view of said section 111 we do not believe there is any presumption that all of this money held by Traver, or in fact any of it, was "applicable" to the payment of the outstanding warrants. Especially is this true in view of this present record, which discloses that the school district had outstanding bonds in the amount of $20,000. Section 102, chapter 138, Laws of 1931, requires that before the issuing of any bonds the school board must provide for the collection of an annual tax sufficient to pay interest and principal thereof, and, when such tax is collected, the treasurer may not use such money for any purpose other than the purpose for which it was levied. If there is any presumption to be indulged in this case, it should be, we believe, that the school board had performed its duty and had levied the tax required under said section 102, and that at least a portion of the money contained in the "jackpot" was money collected for the purpose of paying interest and principal of the outstanding bonds, and could not under the provisions of said section 102 be used by the treasurer for any other purpose. There might be other reasons why the money in the hands of Traver was not applicable to the payment of these outstanding warrants, but the above is sufficient as an example, we believe, to point out that the mere fact that there was in the hands of Traver money in the amount sufficient to pay outstanding warrants does not raise any presumption that this money was "applicable" to the payment of warrants. Unless

this money was applicable to the payment of the outstanding warrants, Traver could not be held negligent in failing to call the warrants and disburse the money. Traver further claims a "special deal" between the school board and the holders of these warrants, which, he maintains, relieves him of any responsibility for the failure to pay these outstanding warrants; but the evidence and record upon this question are so meager that we refrain from expressing any view thereon. The case must be reversed and, if a new trial is had, the question of this "special deal" may be more carefully presented and considered.

In view of the case of State v. Ruth, 9 S. D. 84, 68 N. W. 189, 191, it might be urged that, should it be established that Traver was negligent in not disbursing this money for the payment of outstanding warrants, still he would not be liable because his negligence in failing to disburse the money could not be considered the proximate legal cause of the loss suffered by the school district, but that the proximate cause of such loss was the closing of the bank. We do not believe the Ruth Case is controlling in this case for the reason that it was there pointed out that the defalcation of the state treasurer was an unusual and extraordinary event, and not a thing that Ruth "ought to have * * * foreseen, in the light of the attending circumstances." Under the record here made we are convinced that, so far as Traver is concerned, the closing of the bank "ought to have been foreseen in the light of attending circumstances." The cases of Independent School District v. Scott, Onida Independent School District v. Groth, and Independent School District of City of Brookings v. Flittie, supra, decided without reference to the 1925 law, all held the treasurer and officer of the depositary bank liable because of his negligence in failing to promptly notify the authority designating the depositary of its unsoundness with which knowledge he was charged as an officer of the bank. It is obvious that the basis of such holdings was that the negligence in failing to communicate the information was the proximate cause of the loss suffered. In view of these cases we do not believe that it could be reasonably urged at this time, independent of the 1925 statute, and as to moneys which Traver negligently or willfully failed to disburse in the ordinary course of school district business, that such negligence was not the proximate cause of the loss suffered by the school district.

The judgment and order appealed from are reversed.

ROBERTS, P. J., and CAMPBELL, J., concur.

POLLEY and WARREN, JJ., dissent.

POLLEY, J. (dissenting). I am not able to agree with the conclusion reached by the majority of the court in this case. The evidence shows and the court found as a fact:

"(8) That the defendant Traver, during the said term of office as treasurer of the plaintiff school district, and the continuance in said office, and during the term of the bond executed and delivered by the defendants, and accepted and approved by plaintiff, as and for his official bond as such, and for many years prior thereto, had been a Director, the cashier and active managing officer of the said Farmers State Bank; that all of the records and books of said bank were kept by him or under his directions and supervision and control as the executive officer thereof. That in such position he knew the condition of said bank at all times during the period of time herein involved.

"(9) That the cash reserve of said bank had been materially impaired for more than one year before October 2nd, 1931, *that said bank had been insolvent for more than 7 months before it was closed and that for a period of more than 7* months before it closed the cash reserve had never been over 17.50%, being as low as 6% and averaging for that period only 13.52%, and for a period of more than 2 years before October 2nd, 1931, the cash reserve was continually below the required 17.50%, and during such last mentioned time there was a continual withdrawal of deposits, without a corresponding increase in assets; all of which was known to the defendant Traver at the time.

"(10) That the said Traver also knew the bank's bills receivable and bills payable, its deposits, and that it was impossible to liquidate sufficiently fast to keep up the bank's reserve, that banking conditions in that vicinity were continually growing worse and the cash reserve was becoming more and more impaired and said bank becoming more and more insolvent and in worse condition; and while the cash reserve was below 17½% said Traver as the active executive and managing officer of said bank increased its loans and discounts otherwise than by discounting or purchasing bills of exchange payable at sight or on demand.

"(11) That on and after July 1st, 1929, and during all of the time to and after October 2nd, 1931, there were outstanding warrants of the plaintiff school district which were registered, and older and having priority over later warrants which said treasurer paid, and said treasurer failed, neglected and refused to call and pay the same allowing more than $5,000.00 of said warrants to remain outstanding against the plaintiff and more than said sum of money from time to time to remain in his treasurer's account in said bank with which they could have been paid.

"(12) That knowing the insolvent condition of said bank the defendant Traver accepted and received deposits of plaintiff's money while said bank was insolvent, and while he had knowledge thereof, and while he was acting as the managing officer of said bank, said deposits aggregating $13,541.47 from July 1st, 1930 to July 1st, 1931 and $674.45 from July 1st, 1931 to October 2nd, 1931, when the bank closed. Traver also allowed sundry sums to remain from time to time on deposit therein of plaintiff's money, and never reported the condition of said bank to the plaintiff, or to its Board of Education, but made and accepted such deposits of plaintiff's money in his said bank in violation of his duties as such treasurer, and of his good faith to plaintiff, and of the conditions of his bond, and that such action amounted to a fraud upon this plaintiff.

"(13) That without withdrawing plaintiff's money from his said bank and knowing that it was left therein, Traver took an active part in turning it over to the Superintendent of Banks, and thereby placed said money beyond his control, and thereby rendered it impossible for him to perform the duties of his office. That at no time since October 2nd, 1931, has the said Treasurer, Traver, been able to produce or to properly apply the sum of $7,830.94 of plaintiff's money, nor has he had possession of the same, nor has he been able to get the same into his possession as treasurer. That on the last mentioned date the said bank closed its doors and suspended business and plaintiff's said money was thereby lost.

"(14) That the defendant Traver, while acting as an officer of his said bank retained the public money of the plaintiff, and accepted deposits of the same while insolvent, and used it to bolster up the gradually failing bank. That for more than one year,

to-wit; since July 1st, 1930, said bank had been unable to meet its ordinary obligations in the ordinary course of its business."

The conditions of the bond of the surety provide that the "said Leo A. Traver shall faithfully and impartially in all things, during his continuance in office, perform and discharge the duties thereof without fear, favor, fraud, deceit or oppression and render a true account of and properly apply all moneys and property of every kind that shall come into his hands by virtue of his holding said office. * * *" The bank was insolvent for more than seven months prior to the 2d day of October, 1931. Traver was the cashier and executive officer of the said bank and knew of said insolvency from its inception. Had he made any effort to comply with the terms of the said bond, he would have withdrawn the money of the plaintiff when he knew it was no longer safe in the hands of the bank. It appears from the finding of the court that registered warrants to the extent of $5,000 were outstanding against the school district during the time of the insolvency of the bank. It was the duty of the defendant Traver to call in and pay these warrants, and, had he done so, he would have saved to the district thereby the sum of at least $5,000; but by his failure to perform his duty in this respect, he caused the loss of that sum of money to the plaintiff.

Under the provisions of section 8998, Code of 1919, the defendant Traver was guilty of receiving a part of the money that was in the bank at the time it closed while the bank was insolvent. For this, he was liable to criminal prosecution under the provisions of sections 8998 and 8999, as those sections are construed by this court in State v. Syverson, 39 S. D. 638, 166 N. W. 157. It is very clear to me that the total sum involved of $7,830.94 has been lost to the plaintiff solely by his failure to make any attempt to comply with the provisions of the bond and that both he and the surety company are liable to the plaintiff for that amount.