## STATE v. RUTH.

1. An officer who, without legal excuse, fails to perform a ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such duty.

2. The commissioner of school and public lands is not liable for delay in distributing the public school income fund to the various public schools en-

titled thereto, where it does not appear that the schools sustained any loss by the delay.

3. The commissioner of school and public lands is liable for failure to make, at the time required by law, an estimate of the permanent school fund, and notify the county auditors thereof; thereby causing the funds to remain uninvested, and a consequent loss of interest. If the loss of interest was not caused by failure to make such estimate, the commissioner is liable for at least nominal damages.

4. The commissioner of school and public lands is not liable for failing to distribute among the counties entitled thereto, within the time required by law, certain funds, which were afterwards lost through the defalcation of the state treasurer.

(Opinion filed July 18, 1896.)

Appeal from circuit court, Hughes county. Hon. LORING E. GAFFY, Judge.

Action by the state of South Dakota against Thomas H. Ruth to recover for failure to perform certain ministerial duties. A demurrer to the complaint was sustained, and plaintiff appeals. Reversed.

The facts are stated in the opinion.

*Coe I. Crawford,* Attorney General, for the state.

A complaint charging that the damages alleged to have been sustained were the direct and proximate result of the negligent acts of defendant, is not subject to demurrer. Mechem on Pub. Off. § 643; Lacour v. Mayor, 3 Duer. 406; Lloyd v. Mayor, 5 N. Y. 369; City v. Mulford, 2 Dutch. (N. J.) 56; Rochester White Lead Co. v. Rochester, 3 N. Y. 463. Perhaps the safest criterion as to whether a suit for damages will lie is to adopt the rule which governs in determining whether mandamus would or would not be granted to compel the officer to perform the duty. Mechem on Pub. Off. § 659. School Officers are liable to third persons to whom they owe the duty of performing ministerial acts required of them by law. Mechem on Pub. Off. § 725; Owen v. Hill, 67 Mich. 43, 34 N. W. 649.

*John E. Carland,* for respondent.

The demurrer admits facts well pleaded, but does not admit legal conclusions drawn from those facts by the pleader.

Mosher v. Railroad, 127 U. S. 390, Hitchcock v. Buchanan, 105
U. S. 416; Chicot County v. Sherwood, 148 U. S. 529; Pennie
v. Reis, 132 U. S. 464; Dillon v. Barnard, 88 U. S. 430; Land
Co. v. Land Co., 139 U. S. 569; Gould v. Railroad, 91 U. S. 587;
Railroad v. Palmes, 109 U. S. 242. It is a condition lying at
the very foundation of a private action against a public officer
to recover damages for a wrongful act or omission, that it must
rest upon some duty, owing to the plaintiff by the officer, which
the latter has violated, whereby the plaintiff has sustained a
special damage. State v. Harris, 89 Ind. 363; Buller v. Kent,
19 Johns. (N. Y.) 223; Eslava v. Jones, 83 Ala. 139; Harring-
ton v. Ward. 9 Mass. 251; Raynsford v. Phelps, 43 Mich. 342;
Moss v. Cummings, 44 Mich. 359; Bank v. Mott, 17 Wend. 554.
See also, Throop Pub. Off. § 724; Held v. Bagnell, 58 Ia. 139;
Cooley on Torts. 2d Ed. 446; Strong v. Campbell, 11 Barb. 135;
East River Gas Light Co. 93 N. Y. 557; Thompson, Negl. vol.
2, 812; Mass v. Cummings, 44 Mich. 361. This action is not
commenced by the state in its own right and as a political en-
tity, representing all the people of the state, but in its private
capacity as the custodian of a trust fund, and it is nowhere al-
leged that the state, in its private capacity as trustee has been
injured, and even if it had been, as respondent's duty was
wholly owing to the public, no action would lie. Upon the
question of damages, respondent cited Hoadley v. Transp. Co.,
115 Mass. 304; Dubuque etc. Ass'n v. Dubuque, 30 Ia. 176;
Brown v. Cummings, 7 Allen 507; Boyce v. Bailiff, 1 Camp. 58;
Walker v. Goe, 3 H. & N. 395; Lamb v. Stone, 11 Pick. 527;
Morgan v. Bliss, 2 Mass. 111; Wellington v. Small, 3 Cush. 145;
Bradly v. Fuller, 118 Mass. 239; McGrew v. Stone. 53 Pa. St.
436; Fairbanks v. Kerr, 70 Pa. St. 86; Sutherland on Damages
vol. 2, p. 94; Piper v. Kingsbury, 48 Vt. 480; Memphis v.
Brown, 20 Wall. 289.

HANEY, J. In this action a demurrer was sustained, on
the ground that the complaint does not state facts sufficient to

constitute a cause of action.   Plaintiff elected to stand upon its complaint, and appealed from a judgment in favor of defendant.

The complaint contains the following material facts, after eliminating legal conclusions and unnecessary repetitions: First cause of action:   Defendant was the commissioner of school and public lands during the term which began January 3, 1893.   June 15, 1893, there was in the hands of the state treasurer $68,443.72, in cash, to the credit of the interest fund of each class of public lands, the interest fund of the 5 per centum paid by the United States, and the amount received from leases of school and public lands. This amount appeared on the books in defendant's office, and he was notified of the fact by the treasurer on or about the last-mentioned date.   Prior to July 1, 1893, the county superintendents of the state reported to the defendant the enumeration of persons in their respective counties of school age.   Defendant willfully, and without cause, neglected to apportion the aforesaid fund, or take any action in respect thereto, until October 31, 1893, when an apportionment was made.   By reason of such neglect, it is claimed, plaintiff and its beneficiaries, the public schools, sustained a loss equal to the interest on the aforesaid sum, at 6 per cent. per annum, from June 15, 1893, to October 31, 1893, amounting to $1,539.99, and that they have been damaged to that extent.   Second cause of action:   Defendant, as commissioner of school and public lands, without cause, willfully and negligently failed to make any estimate on or before May 10, 1893, of the amount of permanent school and other educational funds which would be in possession of the state treasurer and uninvested July 1st thereafter.   He further, negligently, and without cause, failed to notify the county auditors of the state of any apportionment of such estimates.   In consequence of such negligence, no application for loans of such funds were received prior to July 1, 1893.   June 30, 1893, $75,526.93, belonging to said funds, was in possession

of the treasurer, and wholly uninvested July 1, 1893. There were numerous demands for the loan of said funds, upon good security in the state, and opportunity for loaning the same. By the exercise of reasonable diligence and care in the performance of defendant's official duties, said fund could have been loaned in the manner and upon the security required by law on July 1, 1893. Defendant willfully neglected to do anything whatever in reference to the apportionment and distribution of the aforesaid funds until October 3, 1893, when the entire amount was apportioned, and notice thereof sent to the county auditors. By reason of such negligence, it is claimed the public schools sustained a loss, equal to the interest on the aforesaid sum, at 6 per cent. per annum, from July 1, 1893, to October 3, 1893, amounting to $1,158.08, and that plaintiff has been damaged to that extent. Third cause of action: On June 15 and 30, 1894, there was in possession of the state treasurer, to the credit of the interest and income fund, the sum of $123,-833.59. On June 15, 1894, the treasurer gave a certificate to defendant, as commissioner of school and public lands, showing the amount of funds in his possession, and to the credit of the interest and income fund of each class of lands, the interest fund of the 5 per centum paid by the United States, and the amount received from leases. This amount also appeared on the books kept by defendant in his official capacity. Prior to July 1, 1894, defendant had in his office, reports showing the enumeration of persons of school age in the several counties of the state. Defendant willfully and negligently failed to apportion all the aforesaid sum, but on July 10, 1894, apportioned the sum of $101,430, leaving unapportioned $19,404.59. January 8, 1895, the state treasurer defaulted with the aforesaid unapportioned balance in his possession, and the entire amount thereof has been lost to the state. It is claimed plaintiff has been damaged to the extent of such balance and interest thereon, at 6 per cent per annum, from July 10, 1894. Fourth cause of action: Defendant, as commissioner of school and

public lands, without cause, neglected to make any estimate whatever on or before May 10, 1894, of the amount of permanent school and other educational funds which would be in possession of the state treasurer, and uninvested, July 1st, thereafter, and failed to notify the county auditors of the state of their apportionate share of the apportionment. And to make any such estimate whatever. In consequence of such negligence, applications for loans of such funds were greatly delayed and restricted during the period prior to July 1, 1894. June 30, 1894, $18,567.45, belonging to the aforesaid funds, were in possession of the treasurer and not invested until July 12, 1894, when defendant apportioned of the above amount $16,360 only, and willfully and without cause failed and neglected to apportion $2,241.45, remaining uninvested in said funds, and he failed to notify county auditors that such balance was on hand. In consequence of such failure and neglect, no applications were received for the loan of said balance, and it was subsequently lost through the defalcation of the state treasurer, in January, 1895. It is claimed plaintiff has been damaged to the extent of such balance, with interest thereon, at 6 per cent per annum, from July 10, 1894.

For convenience, the school funds involved herein will be designated as the "permanent" and "income." The state constitution provides what shall constitute the permanent fund and that it shall be deemed a trust fund held by the state. The principal shall forever remain inviolate. It may be increased, but shall never be diminished, and the state shall make good all losses thereof which may in any manner occur. The interest and income of such fund, together with net proceeds of all fines for violation of state laws and all other sums which may be added thereto by law, shall be faithfully used and applied each year, for the benefit of the public schools of the state, and be apportioned among the several school corporations, in proportion to the number of children of school age. No part of either the permanent or income fund shall ever be

diverted, even temporarily, from, or used for' any purpose other than, the maintenance of the public schools, for the equal benefit of all the people of the state. All losses to the permanent school or other educational funds which shall have been occasioned by the defalcation, negligence, mismanagement or fraud of the agents or officers controlling and managing the same shall be audited by the proper authorities. The amount so audited shall be a permanent funded debt against the state, in favor of the fund sustaining the loss upon which not less than 6 per centum of annual interest shall be paid. State Const. Art. 8, Secs. 2, 3, 13. The state appears in this action in its capacity of trustee, and must be treated as a natural person, acting in the same capacity; regard being had to the character of the trust, and the spirit of the constitutional provisions relating thereto. The rules which regulate ordinary trustees will need to be so applied as to secure and promote the ends contemplated by the constitution. It is the duty of each branch of the state government to regard the sacred character of this important trust, and to insist upon the utmost fidelity in its management.

An officer, such as defendant was, who, without legal excuse, fails to perform a mere ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such duty. This firmly established proposition includes three essential elements: (1) The duty must be merely ministerial; (2) The injury sustained, a proximate result of the failure to perform; and (3) the person injured, one to whom performance is due. Defendant is charged in the first cause of action with having, without legal excuse, failed to distribute the income fund on hand June 15, 1893, until October 31, 1893. Assuming, without deciding, that defendant disregarded a merely ministerial duty, by failing to make the apportionment prior to October 31st, in consequence of which the sum named remained with the state treasurer, when it should have been with the local school 'corporations, there was no

loss sustained which plaintiff, as trustee, was required to make good. Indeed, there was no loss to either the permanent or income fund, nor did defendant's negligence tend in any manner to prevent an increase of either. The practical result of his conduct was to prevent the fund from being expended for an inconsiderable period. The loss to the local corporations, if any, by being deprived of its use, was insignificant and incapable of ascertainment. We conclude that the facts stated in the first count are not sufficient to constitute a cause of action.

It is charged in the second count that by reason of defendant's failure to make an estimate of the permanent fund which would be on hand July 1, 1893, and notify county auditors thereof, $75,526.92 remained uninvested until October 3d, causing a loss of interest which would otherwise have been received, to the amount of $1,158.08. The constitution provides in what class of securities the fund shall be invested, and requires continuous investment as far as possible. Art. 8, Sec. 11. It was defendant's duty to make an estimate on or before May 10th, apportion the amount thereof among the organized counties in proportion to population, and, forthwith notify the county auditors of the amount so apportioned. Laws 1893, Chap. 144, Sec. 1. He had no alternative but to act. In making the estimate, he was, of course, required to exercise judgment and discretion; but the law did not permit him to decide whether or not any estimate should be made within the time specified by the statute. We think, in failing to act at all, he disregarded a plain provision of the law, and failed to perform a merely ministerial duty. It is the nature of the particular duty, and not the character of the office, which determines whether or not a duty is ministerial. It is alleged that, in consequence of defendant's failure to perform this duty, a certain sum belonging to the permanent fund remained for a time uninvested, which otherwise would have drawn interest, and thereby caused a loss to the income fund of $1,158.08. We think this was a loss to one of the educational funds of this

state, through the negligence of an officer controlling and managing the same, which the plaintiff is required to make good, and which it can recover, in its capacity of trustee. Upon a trial it may appear that this loss of interest did not result from defendant's failure to make an estimate. It is somewhat doubtful if the facts, as alleged, show that it did; but the pleading must be construed liberally, and in any event, plaintiff is entitled to nominal damages upon the facts stated in this count.

In the third and fourth counts it is charged that defendant failed to distribute certain funds among the several counties within the time required by law, and that these funds were lost through the defalcation of the state treasurer. Assuming, for the purpose of construing these counts, that a loss was sustained which plaintiff was required to make good, and that defendant failed to perform a merely ministerial duty, it becomes necessary to determine what was the proximate cause of such loss. It is not alleged that defendant's conduct was corrupt, or that he was guilty of any wanton wrong. The maxim, "*causa proxima non remota spectatur,*" is applicable. This maxim is universally admitted, and the difficulty in its practical application is quite as widely conceded. The difficulty results, not from any defect in the rule, but in applying a principal stated in general language to the facts of each particular case. Dubuque Wood & Coal Ass'n v. City and County of Dubuque, 30 Iowa 176. This rule is exhaustively discussed by the supreme court of the territory in Pielke v. Railway Co., 5 Dak. 444, 41 N. W. 669. In that decision Mr. Chief Justice TRIPP quotes with approval from Railway Co. v. Kellogg, 94 U. S. 469, as follows: "The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that in order to

warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances. We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But, when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must therefore always be whether there was any intermediate cause, disconnected from the primary fault, and self-operating, which produce the injury." The principle is of frequent application in cases of negligence, as distinguished from wanton or intentional injuries. If we could deduce from the cases the best possible expression of the rule, it would remain, after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations. One of the most valuable criteria furnished by the authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote. Insurance Co. v. Tweed, 7 Wall. 53. Applying this principle to the case at bar, it would seem clear that defendant cannot be' held liable upon the facts as alleged in either the third or fourth count of the complaint. He was not custodian of the funds. They were in the possession of the person with whom the law required them to be deposited, presumably secured by a good and sufficient official bond. It is not charged that defendant was in any manner connected with, or in the slightest degree responsible for, the

treasurer's defalcation. It was neither directly nor remotely caused by any act or omission of defendant. It was not a natural or probable consequence of his negligence that ought to have been foreseen, in the light of the attending circumstances. In the ordinary course of events, a failure to distribute public money would result in its remaining in the treasury, and the most serious consequence which could be reasonably anticipated would be the loss of its use by the corporations or persons entitled thereto. Here an unusual, extraordinary event, a new, independent and efficient cause—the treasurer's defalcation—intervened, in itself sufficient to stand as the cause of the misfortune. It, and not defendant's negligence, was the proximate cause of the alleged injury. Neither the third nor fourth count contains facts sufficient to constitute a cause of action. However, as the demurrer was directed to the entire complaint and as a cause of action is stated in the second count, the court below erred in sustaining the demurrer. Therefore the judgment is reversed, and the cause remanded for further proceedings according to law, and not inconsistent with this opinion.