500 P.2d 916

Jo Ellen HANSON, surviving parent of Patricia Joella Hanson, and as guardian ad litem of Jimmie Dale Byus, Petitioner,

v.

Charles ROWE and Patricia Rowe, husband and wife, State of Arizona, and Honorable Lawrence H. Doyle, Jr., Judge of the Superior Court, Respondents.

No. 1 CA–CIV 2069.

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 7, 1972.
Rehearing Denied Oct. 11, 1972.
Review Denied Nov. 21, 1972.

Terry M. Pierce, Phoenix, for petitioner.

Maupin, Wilson & Maud by Donald R. Wilson, Phoenix, for respondents.

JACOBSON, Judge.

This special action questions the propriety of the trial court's reliance upon A.R.S. § 8–519 in denying a plaintiff access to information held by the Department of Public Welfare.

Petitioner, Jo Ellen Hanson, surviving parent of Patricia Joella Hanson and as guardian ad litem of Jimmie Dale Byus, instituted an action in the Superior Court of Maricopa County against real parties in interest, Charles Rowe, Patricia Rowe and the State of Arizona, seeking damages for the wrongful death of Patricia Joella Hanson and for personal injury damages suffered by Jimmie Dale Byus at the hands of Charles Rowe. Charles Rowe is presently serving a term in the Arizona State Prison for the second degree murder of Patricia Joella Hanson. The children had been placed by the State of Arizona through the Department of Public Welfare with Charles and Patricia Rowe as foster parents.

During the course of this litigation petitioner served upon the State of Arizona the following interrogatory:

"6. State the name and last known address of any children for whom the Rowes acted as foster parents at any time."

This interrogatory was answered in the following manner:

"Jo Ellen Hanson

"Address unknown

"Mother

"Rowes have acted as foster parents for several other children. Names and addresses of said parents are confidential under A.R.S. § 8–519."

Petitioner by appropriate motion sought the names of the other parents indicated in that answer. After a hearing, the respondent judge issued his order in part stating:

"Therefore, the Court concludes as a matter of law, that it is not the intent of the Statute, A.R.S. § 8–519, as annotated, or to the best interest of all of the third parties involved, to permit said discovery as requested as to Interrogatory No. 6. Therefore, IT IS ORDERED denying the motion to answer the Interrogatory No. 6."

It is this order which petitioner seeks to have reviewed by this special action.

The State of Arizona does not question the propriety of a special action to review this ruling.

Petitioner contends that a crucial element of her lawsuit against the State of Arizona hinges on proof of knowledge by the State of the unfitness of the Rowes to act as foster parents and the only source of such proof lies with other parents whose children were placed in the Rowe home. It is further contended that the only source of the identity of these parents is the State. The State neither questions the materiality of the interrogatory nor suggests that other sources are available to obtain the desired information, but contends that under A.R.S. § 8–519 such information is privileged.

■ The statute in question, A.R.S. § 8–519, enacted in 1970, provides in part:

"B. All records and information in the possession of the department or any child welfare agency regarding children and their parents or relatives shall be deemed confidential, and shall be disclosed only pursuant to rules by the division or by order of court."

We note initially that the predecessor of A.R.S. § 8–519, A.R.S. § 8–517, was couched in exactly the same language as A.R.S. § 8–519, except that it did not contain the language "or by order of court". Thus, on its face and by simple reference to the legislative history of this statute, it is apparent that the legislature did not intend to grant an absolute privilege against disclosure of welfare department records. However, the words "by order of court" give no clue as to the circumstances under which the legislature intended that the court should order disclosure.

The State contends that disclosure should be granted only under circumstances which would possibly assist in the protection, welfare or treatment of the children or their families. In making this argument the State analogizes A.R.S. § 8–519 to A.R.S. § 8–120, dealing with adoption records, which by its terms allows inspection only when necessary for the "protection, welfare or treatment of the child" and if "ordered by the court." It is apparently upon this argument that the trial court relied in denying access to the requested information. We are of the opinion that such a test is too stringent and is neither legally required nor required on grounds of public policy.

A landmark case in the area of discovery of confidential records kept by a governmental agency is State ex rel. Haugland v. Smythe, 25 Wash.2d 161, 169 P.2d 706, 165 A.L.R. 1295 (1946). In that case Haugland, as administrator of the county welfare department, sought to prohibit Smythe, a judge of the superior court, from gaining access to various files of the department dealing with a certain delinquent child. While factually the case is distinguishable from the case under consideration, the court sets forth one standard to be applied in requiring disclosure of governmental records by determining whether the "injury that would inure to the relation [i. e. the confidential relationship] by the disclosure of the communica-

tion must be greater than the benefit thereby gained for the correct disposal of litigation", citing 8 Wigmore on Evidence, § 2285, at 527 (3rd ed. 1961).

Another criterion for determining whether disclosure is permissible under a confidential statute was set forth in Bell v. Bankers Life & Casualty Co., 327 Ill.App. 321, 64 N.E.2d 204 (1946), which held in an action involving private litigants:

> "This prohibition [the Illinois statute granting privilege] was clearly intended to forbid voluntary disclosures but it was never intended to prevent the disclosure of the contents of official documents pursuant to the compulsion of a subpoena where the contents of such documents are pertinent to a legal inquiry." 64 N. E.2d at 208.

For other decisions holding that privilege statutes prohibit only "voluntary disclosures", see Jones v. Giannola, 252 S.W.2d 660 (Mo.App.1952); Maine Sugar Industries, Inc. v. Maine Industrial Bldg. Authority, 264 A.2d 1 (Me.1970); Maryland Casualty Co. v. Clintwood Bank, Inc., 155 Va. 181, 154 S.E. 492 (1930).

■ In our opinion, the Arizona statute prohibits more than "voluntary disclosures" and was intended to extend to records of the welfare department a privilege against disclosure comparable with the testimonial privilege available at common law. Carr v. Monroe Mfg. Co., 431 F.2d 384 (5th Cir. 1970), cert. den., Aldridge v. Carr, 400 U. S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971). Further, we are of the opinion that the proper test to be applied by the court in determining whether the privilege should be granted is that adopted by Haugland v. Smythe, *supra*, and amplified by *Carr*:

> "The granting or withholding of any privilege requires a balancing of competing policies, 8 Wigmore, § 2285 at 527–

28. The claim of governmental privilege is no exception; in fact, the potential for misuse of government privilege, and the consequent diminution of information about government available to the public, is one more factor which strongly suggests the need for judicial arbitration of the availability of the privilege."[1] 431 F.2d at 388.

■ We therefore hold, in the absence of an express absolute statutory prohibition against disclosure[2], the court has the obligation under A.R.S. § 8–519 to determine whether the potential harm which may flow from the disclosure outweighs the benefit to be derived for the correct disposal of pending litigation.

■ It therefore follows that the trial court was in error in limiting its consideration solely to whether the best interests of the parents of children placed in foster homes would or would not be served by disclosure of their names. This is merely one of the factors the court should consider. Having determined the trial court improperly considered the matter, we are of the opinion that under the circumstances of this case, it is unnecessary to remand this matter back to the trial court for its proper determination of this issue. The factors weighing both for and against disclosure have been adequately presented by both parties to this court.

■ On the one hand disclosure of the names of parents whose children were placed in foster homes is possibly going to cause such parents shame, humiliation and, in the words of the State, "reopening very probably unpleasant memories that may well now be dispelled." On the other hand, failure to disclose these names will in effect terminate the litigation against the State of Arizona and, if in fact, the State had prior knowledge of the proclivities of the defendant Charles Rowe for vi-

---

1. Also *see* Mathews v. Pyle, 75 Ariz. 76, 251 P.2d 893 (1952). While not dealing with a privilege statute, the court adopted the approach of a judicial weighing of the conflicting policies involved in determining disclosure of governmental records. A summary of Arizona case law on this subject is found in Udall, Arizona Law of Evidence, § 102, at 187 (1960).

2. *See* Boudreau v. Holzer, 280 A.2d 88 (R.I.1971), for a decision upholding the absolute statutory privilege.

olence and failed to safeguard properly or protect children placed in his home, non-disclosure might tend to encourage lackadaisical supervision by the department over its foster parent program. In weighing these considerations, we are of the opinion the scales tip in favor of disclosure. However, as was stated in *Carr*:

> "As a corollary, a trial court is duty-bound, where it orders production of documents in which there are strong policy reasons against public disclosure, to limit the availability and use of those documents and their contents by carefully drawn protective provisions." 431 F. 2d at 390.

We agree with this statement and further such protective orders might explore the feasibility of limiting the nature of the inquiry and contact by plaintiff's counsel to matters directly material to the issues of this litigation. Moreover, the State, if in reviewing its files, finds a particular case where disclosure might work an extraordinary hardship, the trial court should entertain an application for further protective orders that will give due regard to the privacy and dignity of the individuals affected. The type, scope and need for a particular protective order is, in our opinion, best left to the determination of the trial court on presentation of proper evidence and argument.

One additional issue needs to be touched on in this matter and that concerns the contention advanced by the State that the foster home program is closely aligned with federal funding and federal regulations, which regulations require the State to adopt a plan of confidentiality to be eligible for continued federal funding. The State raises the spectre of the unavailability of such federal funding should disclosure be allowed in this and future cases. 42 U.S.C.A. § 602 provides that in order for a state to receive federal funds for foster home care the state must enact a plan to:

> "9. provide safeguards which restrict the use or disclosure of information concerning applicants and recipients to pur-

poses directly connected with the administration of aid to families with dependent children."

45 C.F.R. § 205.50 further clarifies the federal requirements in this area by providing:

> "(a)(2)(i) Types of information to be safeguarded include but are not limited to:
>
> > "(a) The names and addresses of applicants and recipients and amounts of assistance provided (unless excepted under paragraph (b) of this section)."

Paragraph (b) of § 205.50 provides:

> "(b) *Exception.* In respect to a state plan . . . exception to the requirements of paragraph (a) of this section may be made by reason of the enactment or enforcement of State legislation, prescribing any conditions under which public access may be had to records of the disbursement of funds or payments under such titles within the state, if such legislation prohibits the use of any list or names obtained through such access *to such records for commercial or political purposes.*" (Emphasis added.)

It is apparent that the federal statutes and regulations were primarily concerned with disclosure which might result in a commercial or political use. There is no contention here that petitioner intends to use the names in any commercial venture or political campaign, rather the intent is to ascertain the liability of the particular agency which seeks to invoke the privilege. In our opinion, the federal statutes did not intend to restrict the disclosure of the information requested under the circumstances of this case.

By reason of the foregoing, the relief requested by petitioner is granted and the matter is remanded with directions to grant petitioner's motion to compel further answers to Interrogatory No. 6 under such protective orders as the trial court may deem appropriate.

HAIRE, Chief Judge, Division 1, and EUBANK, J., concur.