SIOUX FALLS CONSTRUCTION
COMPANY, a corporation,
Plaintiff and Appellant,

v.

CITY OF SIOUX FALLS, a Municipal
Corporation, and Lester J. Hash,
Defendants and Appellees.

No. 12905.

Supreme Court of South Dakota.

Argued April 18, 1980.

Decided Oct. 8, 1980.

Lyle J. Wirt, of Davenport, Evans, Hurwitz & Smith for plaintiff and appellant; Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

William P. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees.

MORGAN, Justice.

The principal issue in this appeal arises from the trial court's entries of summary judgment against the plaintiff–appellant, Sioux Falls Construction Company (contractor), on two counts of negligence, which decisions were based on the trial court's determination that the defendants–appellees, City of Sioux Falls (city), and Lester J. Hash (Hash), were clothed with governmental immunity while engaged in a governmental function, i. e., flood control, when the injuries of which contractor complained occurred. We affirm in part, reverse in part, and remand.

Contractor entered into two contracts with city in December 1976 and February 1977 for construction of a bridge spanning the Big Sioux diversion channel and installation of two wellpoint systems situated in the channel. At the time the contracts were let, and when the construction began on the respective projects, the channel was dry as a result of drought conditions in the area. The fact situation will be discussed as appropriate to the issues; but in brief, several pieces of contractor's construction equipment were damaged when runoff water from rains and the melting snow upstream flowed into the area of the channel where contractor was working. Contractor filed a claim against city which was denied, so contractor instituted a suit against city. One amended complaint was served and filed, and then a second amended complaint was served and filed naming Hash, Superintendent of the Sioux Falls Water Department, as an additional defendant.

The complaints generally alleged two causes of action. The first, in breach of contract; and the second, in tort. City, and later Hash, both answered the pleading: (1) Failure to state a claim; (2) governmental immunity; (3) denial of agreement to divert water; (4) failure of consideration for any such agreement; (5) unenforceability of an oral agreement, if any; (6) waiver; (7) payment in full; (8) contributory negligence; and (9) assumption of the risk. On motion of city the trial court granted summary judgment against contractor's second cause of action on the grounds of govern-

mental immunity. On motion of Hash the trial court likewise granted summary judgment on contractor's second cause of action on the grounds that Hash was acting in his official capacity and thereby was also immune.

The case went to trial on the breach of contract cause of action and the jury returned a verdict in favor of city. Contractor claims that the jury was not properly instructed and appeals from the final judgment entered on the verdict in addition to the summary judgments previously entered.

We first address ourselves to the issue of the immunities raised by appellees' pleadings and as found by the trial court. Contractor's claim of negligence is founded not on any obligation arising out of the original contracts, but out of an alleged subsequent agreement that in the event of high water conditions in the Sioux River upstream, city would divert the water away from the construction area for a sufficient period of time to permit contractor to remove its equipment and materials. This diversion was to be accomplished by opening the floodgates into another channel situated upstream from the construction site. The alleged negligence on the part of appellees was that they failed to keep abreast of conditions upriver; to anticipate runoff water; and to timely open the floodgates or to warn contractor that they were not diverting the water. Some four to five feet of water began to flow through the channel during the night. City workers later attempted to open the floodgates, but most of them were rusted shut so that only a couple could be opened, and then only partially. Contractor's employees, when told of the situation, were able to remove only one or two pieces of equipment and some materials. The claim for damages to the balance amounted to some $17,000 plus approximately $7,000 for other losses.

City moved for summary judgment on the following grounds: (1) Failure to state a claim; (2) no genuine issue of fact; and (3) governmental immunity. The trial court determined that: (1) City, as a municipality and political subdivision of the state, has sovereign and governmental immunity from liability and actions for liability except in those situations where a specific remedy is allowed by statute or the municipality is engaged in a proprietary function; (2) no statutory remedy is provided for damages caused by the negligence as alleged in contractor's complaint; and (3) contractor's second cause of action arises from city's activities while engaged in a governmental function, that being flood control; therefore city is immune from liability.

In *Brasel v. Myers*, 89 S.D. 114, 117, 229 N.W.2d 569, 570 (1975), this court reiterated the summary judgment guidelines which were first delineated in *Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968), as follows:

(1) The evidence must be viewed most favorably to the nonmoving party;

(2) The burden of proof is upon the movant to show clearly there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(3) It was never intended to be used as a substitute for a trial by jury where any genuine issue of material fact exists;

(4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so insubstantial that it is obvious that it would be futile to try them;

(5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear, and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant;

(6) Where, however, no genuine issue of fact exists, it is looked upon with favor and is particularly adapted to expose sham claims and defenses.

■ The trial court's determination that there is no specific remedy provided by statute that would afford contractor relief

is not challenged. We look then to the determination that city was engaged in a governmental function, i. e., flood control. Contractor attacks the validity of the governmental immunity doctrine and urges that we overturn it in spite of our previous holdings in *Conway v. Humbert*, 82 S.D. 317, 145 N.W.2d 524 (1966), and several cases subsequently. As we most recently held in *High Grade Oil Company et al. v. Sommer*, 295 N.W.2d 736, 738 (S.D.1980), "[W]hile we agree that the doctrine is 'judge made law,' we are reminded that it is a doctrine of long standing; so long in fact, that it antecedes the federal and state constitutions." While *High Grade Oil* was restricted to the question of governmental immunity as applied to the state, as opposed to local governmental units, we adopt its rationale and that of our previous decisions and decline to abrogate the doctrine of governmental immunity outright.

We next consider the general question of whether flood control is a governmental or proprietary function. As this court stated in *Bucholz v. City of Sioux Falls*, 77 S.D. 322, 326–327, 91 N.W.2d 606, 608–609 (1958) (citations omitted),

> While the distinction between governmental and corporate or proprietary functions is in nearly all jurisdictions recognized in determining the tort liability of municipalities difficulty often arises in the application of the rule and holdings have not been uniform and consistent. . . . ". . . Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers, and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporations."

■ In determining whether a certain activity is governmental or proprietary, this court has said that "[i]t is the nature of the activity that determines whether it is ministerial or proprietary, and not the location, nor the fact that the facility may also be used for governmental purposes." Id. at 329, 91 N.W.2d at 610.

■ City refers us to that portion of *Bucholz* where we said, " '. . . It has been held that municipalities are not liable for such acts and omissions in the exercise of the police power . . . .' " Id. at 327, 91 N.W.2d at 609 (citations omitted). Counsel urges that in the supervision and operation of a flood control system a city is exercising police powers in an attempt to protect the property and health of the public. We agree to the extent that a city is protected by governmental immunity from injuries arising while it is engaged in the task of controlling flood waters. In this case, however, there is nothing in the record that would support a determination by the trial court that the runoff could be denominated a flood. In fact, the trial court made no specific determination as to the character of the water. That is to say, the mere fact that the channel was a part of the flood control system does not automatically render all water going through it flood water. We would distinguish between the rampaging waters of a river at or near flood stage and the ordinary flow of water from runoff. The record discloses that the height of the flow in the channel rose to only some four to five feet. In dealing with flood waters, city officials are making a judicious decision on how best to minimize the possible damages. In that function they are entitled to immunity. Viewing, as we must, the evidence most favorably to the nonmoving party, we find nothing in the fact situation that would bring this case within that framework. We therefore reverse the entry of the summary judgment in favor of city.

We next consider the summary judgment entered by the trial court against contractor on its cause of action against Hash.

In its grant of summary judgment for Hash, the trial court specifically found that "defendant Lester J. Hash is a public offi-

cial exercising a discretionary function within the scope and course of his employment for all times material to the case at bar, therefore defendant, Lester J. Hash, is immune from liability to plaintiff for its damages herein under plaintiff's Second Amended Complaint . . . ."

Contractor attacks this holding by alleging that the doctrine of governmental immunity does not extend to officers and agents of governmental units. Hash counters by arguing that he is not asserting an extension of governmental immunity, but rather, a separate and distinct public officer's immunity that shields him from liability. He cites the Restatement (Second) of Torts § 895D (1979) which, in pertinent part, reads as follows:

(1) Except as provided in this Section a public officer is not immune from tort liability.

. . . . .

(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

(a) he is immune because engaged in the exercise of a discretionary function[.]

As one can readily see, the trial court's finding is a paraphrase of this portion of the rule.

An examination of the comments to the rule discloses that the rule is actually an outgrowth of the doctrine of governmental immunity, not merely an extension of it. We perceive the possibility of some instances where a city could be immune while exercising a governmental function, yet an officer could be liable; or, in the alternative, a situation where a city could be liable while acting in a proprietary function, yet the officer could be immune.

To uphold governmental immunity as to the governmental unit only, while allowing the officers, agents, and employees to be held liable, would be chaotic. As Restatement (Second) of Torts § 895D, Comment b (1979), points out:

The complex process of the administration of government requires that officers and employees be charged with the duty of making decisions either of law or of fact, and of acting in accordance with their determinations. It has traditionally been explained by the courts that public officers and employees would be unduly hampered, deterred and intimidated in the discharge of their duties, and as a result undesirable shackles would be imposed upon agencies of government, if those who act improperly or even exceed the authority given them were not protected in some reasonable degree by being relieved from private liability.

The problem then is to determine whether Hash fits within the rule. Again we look to the evidence as it was before the trial court at the time that the summary judgment was granted. The fact that Hash was a public official is beyond dispute. The question whether he was exercising a discretionary function, however, requires considerable study. In Restatement (Second) of Torts § 895D, Comment d (1979), the author points out:

[A high-level executive officer] must feel free to act in his discretionary decisions as he sees fit, without being subject to influence by the threat of a harassing suit. . . .

. . . It extends also to lower administrative officers when they engage in making a decision by weighing the policies for and against it. For these reasons it is commonly said that public officers are given an immunity from liability in tort when they engage in exercising a "discretionary function."

■ The first test suggested by the author is whether the particular activity should be characterized as a discretionary function. Hash's motion was in the alternative: there was no duty imposed on him whatsoever, or in the alternative, he was immune from liability. The trial court made no finding on the question of duty, but to get to the alternative reason we must assume that it believed that there was

a duty.* Hash's duty was to either protect contractor's equipment by diverting the water, or to warn it that he was not doing so. Can this duty be denominated a discretionary function? We do not think so. Under the various factors enumerated in the comments, too numerous to detail here, we do not find any that suggest that the decision to ignore the request to act in one manner or another to protect contractor's property, or to permit it to do so itself, was in any manner an exercise of a discretionary function. We therefore reverse the decision of the trial court.

With respect to the jury verdict on contractor's first cause of action for breach of contract, contractor urges that the trial court erred in refusing its proposed instructions on estoppel. Contractor proposed alternative instructions. The first was an outright instruction that the original contracts were modified so that city had agreed to divert water away from the work area. The second submitted to the jury the question of whether, under the evidence, city was estopped from denying that the contracts were so modified.

In *City of Rapid City v. Hoogterp,* 85 S.D. 176, 179–180, 179 N.W.2d 15, 16 17 (1970) (citations omitted), this court stated:

> In considering the application of the doctrine of estoppel each case, in the nature of things, must stand on its own facts. It seeks to accomplish that which is fair between man and man.
>
> ... [T]he doctrine of estoppel is available against a municipal corporation. However, estoppels against the public are little favored and should be used sparingly. They are applied against municipal corporations with caution and only when exceptional circumstances demand their application to prevent manifest injustice. The burden of establishing that such exceptional circumstances are present is on the party seeking the protection of the doctrine.

.        .        .        .        .

> "... The basis of its application usually is not because of nonaction by municipal officers but *because they have taken some affirmative action influencing another* which renders it inequitable for the municipality to assert a different set of facts." (Emphasis added.)

█ The record does not disclose any affirmative action on the part of Hash or any other city employee. We cannot, therefore, say that the trial court erred in refusing the proposed instructions regarding estoppel. We affirm the judgment entered with respect to the first cause of action.

Finally, we are brought to city's argument that even though the trial court erred in granting summary judgment on the grounds of immunity, it was a proper remedy under city's alternative motion that no legal duty was imposed upon city to do the acts which contractor claims it negligently failed to do; there being no duty, there can be no negligence. As in the Hash summary judgment, the trial court did not rule on the first alternative, i. e., the lack of duty. Again, we must assume that in order to reach the second alternative the trial court either believed that there was a duty or there were issues of fact; but in either alternative, city was protected by governmental immunity.

█ Yet city points to the jury verdict (which we have now affirmed) as proof of the lack of duty. At the time of the ruling on summary judgment, however, the first cause of action had not yet been tried, and there was no jury verdict. Furthermore, the jury verdict went only to the issue of whether or not there was a liability for breach of contractual duty. In the trial of that issue, contractor was precluded from establishing any duty outside the contractual agreements which could give rise to the action for liability for negligence. The evidence given at trial was disputed. On the basis of the record presently before us we are disposed to say that the trial court erred in not granting city's motion for summary judgment on the grounds that there was no duty.

---

* Alternatively, the trial court may have believed that there was a fact question on that issue.

We therefore affirm the judgment entered on the breach of contract issue, but we reverse the entry of the summary judgments for city and Hash and remand for further proceedings.

All the Justices concur.