NATIONAL BANK OF SOUTH DAKOTA, Guardian Ad Litem for Debbie Carstensen and Bonnie McCoy, Plaintiff and Appellant,

v.

Richard L. LEIR; Kay Streeter; Annamae Blume; and Noreen Lemery, Defendants and Appellees,

and

Glenn Franklin Brown; and Iva Brown a/k/a Ivy Brown, Defendants.

No. 13561.

Supreme Court of South Dakota.

Argued Feb. 22, 1982.

Decided Nov. 3, 1982.

Rehearing Denied Dec. 13, 1982.

Gregory A. Eiesland of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellant; Gary D. Jensen of Lynn, Jackson, Shultz & Lebrun, Rapid City, on brief.

Glenn H. Johnson and Jerry D. Johnson of Banks & Johnson, Rapid City, for defendants and appellees.

MORGAN, Justice.

This is an appeal from a summary judgment against the appellant, National Bank of South Dakota, guardian ad litem for D.C. and B.M., minors (guardian). Guardian sued defendant social workers for their al-

leged negligent placement and supervision of D.C. and B.M. in a foster home. The trial court entered summary judgment against guardian and in favor of social workers on the grounds that these social workers are immune from suit under the sovereign immunity doctrine. Guardian appeals and we reverse and remand.

In May 1975 social workers placed sisters D.C., then seven years of age, and B.M., then four years of age, in the foster home of Glenn and Ivy Brown. For the next two years, the sisters were sexually abused by their foster father, *State v. Brown,* 285 N.W.2d 843 (S.D.1979), and physically abused by both of their foster parents. According to Department of Social Services' (Department) files maintained by these social workers, a number of incidents took place while the sisters were in the Brown foster home. During this time, social workers received complaints from the neighbors that the Browns were abusing D.C. and B.M. Additionally, D.C. and B.M.'s mother reported to the social workers that there were "rumors" about Glenn Brown, that B.M. was forced to sleep on the floor, and that B.M. had bruises that may be caused by abuse. Social workers, however, accepted the Browns' explanation that B.M.'s bruises resulted from her "accident prone" nature. Despite these complaints of abuse and their knowledge of Browns' animosity toward the children's mother,[1] the social workers did not remove the children from the Browns' home.

Also during this two-year period, significant changes were noted in D.C.'s and B.M.'s behavior. According to Department's files, although D.C. previously was an excellent student, her grades dropped and in April 1977 when she was hospitalized for abdominal disorders the physician attributed her illness to emotional problems. The younger sister, B.M., lapsed into a baby role, was nasty to other children, would injure herself, continued going through eating motions when her plate was empty, and

was "very destructive." At this time, one of the social workers noted in her file that she had "encouraged [Mrs. Brown] to forget about those [rumors of abuse] as [Mrs. Brown] can't do an effective job of mothering if she keeps worrying about what everyone will say."

While D.C. and B.M. were placed in the Browns' foster home, the social workers only once talked to the sisters alone and that discussion involved their mother's visitations. Although one social worker noted in her file that she had a "suspicious attitude" and "doubts about the wholesomeness of the [Brown] family situation," D.C. and B.M. were left in the Browns' care until a car accident in June 1977 in which Mrs. Brown was injured. After the car accident, the sisters were placed in a different foster home and in August 1977 they were returned to their natural mother. Shortly after the sisters were returned to their mother, they informed her of the physical and sexual abuse. *State v. Brown,* 285 N.W.2d at 844. Subsequently, as a result of his sexual abuse of D.C. and B.M., Glenn Brown was convicted of four counts of rape in the first degree, and two counts of indecent molestation of a minor child.[2] *Id.*

As guardian ad litem for D.C. and B.M., guardian instituted this action against social workers, alleging that social workers' neglect and violations of Department's rules and regulations made possible the continuing sexual and physical abuse of D.C. and B.M. Social workers denied the allegations and filed a motion to dismiss, asserting that they are immune from suit under the sovereign immunity principles announced in *High-Grade Oil Co. v. Sommer,* 295 N.W.2d 736 (S.D.1980). The trial court, treating the motion as one for summary judgment, granted summary judgment in favor of social workers. Guardian now appeals and the sole issue facing the court is whether social workers, as state employees, are immune from suit for acts of negligence under the sovereign immunity doctrine.

---

1. Animosity arose from the prior relationships between the Browns and the children's mother. D.C.'s and B.M.'s mother is the sister of Mrs. Brown. Also, the children's mother was previously married to Glenn Brown's brother.

2. Brown's convictions also involved two other minor children.

For the purpose of this opinion only, we assume that the guardian has a valid claim for negligence.

 Sovereign immunity provides the state with immunity from suit unless the state has consented to the particular suit alleged. *Merrill v. Birhanzel,* 310 N.W.2d 522 (S.D.1981); *Conway v. Humbert,* 82 S.D. 317, 145 N.W.2d 524 (1966); *see* 72 Am.Jur.2d *States* §§ 99–114 (1974). As an outgrowth of sovereign immunity, a public officer may also be immune from suit when acting within the scope of his authority. *Sioux Falls Const. Co. v. City of Sioux Falls,* 297 N.W.2d 454 (S.D.1980). In some instances, a suit, although nominally against a public officer in an individual capacity, actually is a suit against the state where the state is the real party against which relief is sought. In these instances, the suit is barred by sovereign immunity. *High-Grade Oil Co. v. Sommer, supra.*

 Initially, this court must determine whether this action by guardian ad litem is an action against the state. As stated in *High-Grade Oil,* an action is against the state,

> [w]here the state is the real party against which relief is sought, and where a judgment for the plaintiff although nominally against the officer as an individual, could operate to subject the state to liability[.] [3]

295 N.W.2d at 737. *See White Eagle Oil & Refining Co. v. Gunderson,* 48 S.D. 608, 205 N.W. 614 (1925).

In *High-Grade Oil,* this court held that the action, although nominally against a state employee, was actually against the state. The South Dakota Constitution, art. XIII, § 9, provides that highway construction is a function of state government. The legislature vested that responsibility in the Department of Transportation. A decision in *High-Grade Oil* adverse to Sommer would require the Department of Transportation to alter the curve. *Maxwell v. State,* 391 So.2d 1230, *cert. den.* 394 So.2d 281 (La.App.1980); *State Farm Mut. Auto. Ins. Co. v. Slaydon,* 376 So.2d 97 (La.1979); *Wilson v. State,* 364 So.2d 1313 (La.App.1978), *cert. den.* 366 So.2d 563 (1979); *Furness v. Michigan Public Service Com'n,* 100 Mich. App. 365, 299 N.W.2d 35 (1980). Such a requirement places a financial burden upon the state and, of course, subjects the state to liability. Because the decision would have subjected the state to liability, the *High-Grade Oil* action was in effect an action against the state and barred by sovereign immunity.[4]

 In contrast to *High-Grade Oil,* an adverse decision in the instant case would not subject the state to liability. Where the suit in *High-Grade Oil* stems from the design and construction of a curve in a highway, the suit against social workers stems from their own personal action and inaction. A finding of negligence in the instant case would impose financial liability upon the social workers not the state. Because this suit does not expose the state to liability, this action is not barred by sovereign immunity as an action against the state.

After determining that this is not an action against the state, we now must de-

---

3. A further test for determining whether an action is not against the state was set out by the court in *White Eagle Oil & Refining Co. v. Gunderson,* 48 S.D. 608, 205 N.W. 614 (1925) and cited to in *High-Grade Oil v. Sommer,* 295 N.W.2d 736 (S.D.1980). In *White Eagle,* the court stated that an action is not against the state when the action is "maintained against defendants, who while claiming to act as officers of the state, violate and invade the personal and property rights of the plaintiffs under color or authority unconstitutional or void ...." 205 N.W. at 617. The *White Eagle* test determines only if a suit is or is not against the state; the test does not determine if a suit is against an officer in an official or individual capacity. In *White Eagle,* the plaintiffs con-

tended that the officers were acting under an unconstitutional statute. This test is not applied in the instant case because guardian does not contend that social workers were acting under unconstitutional authority.

4. *Compare Kruger v. Wilson,* 325 N.W.2d 851 (S.D.1982), where an adverse decision would not subject the state to liability. In *Kruger,* a state employee allegedly negligently drove a state vehicle. The subsequent suit against the employee to recover for personal injuries and property damage would not result in financial consequences to the state. Thus the action in *Kruger* is not an action against the state.

termine whether this action is against social workers in their official capacities or as individuals. The immunity available to employees of governmental units is actually "an outgrowth of the doctrine of governmental immunity." *Sioux Falls Const. Co. v. City of Sioux Falls,* 297 N.W.2d at 458. In some instances, sovereign immunity will bar a suit against an employee acting within the scope of his employment. *Sioux Falls Const. Co. v. City of Sioux Falls, supra* (citing to Restatement (Second) of Torts § 895D (1979)). *See* 72 Am.Jur.2d *States* § 115 (1974).

■■ Whether immunity is available to a governmental employee depends upon the nature of the function exercised by the employee. *Sioux Falls Const. Co. v. City of Sioux Falls, supra; Walters v. City of Carthage,* 36 S.D. 11, 153 N.W. 881 (1915); *State v. Ruth,* 9 S.D. 84, 68 N.W. 189 (1896); see 72 Am.Jur.2d *States* § 115 (1974). Immunity extends to an employee who, while acting within the scope of his employment, exercises a discretionary function. *Sioux Falls Const. Co. v. City of Sioux Falls, supra.* In reviewing the discretionary versus ministerial dichotomy, we have held that a state employee who "fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom he owes performance of such duty." *State v. Ruth,* 9 S.D. at 90, 68 N.W. at 190. *See, Conway v. Humbert, supra; Walters v. City of Carthage, supra.*

In *Sioux Falls Const. Co.,*[5] we looked to Restatement (Second) of Torts § 895D (1979), in determining what is a discretionary function. The factors listed therein at comment f include:

(1) The nature and importance of the function that the officer is performing . . . .

(2) The extent to which passing judgment on the exercise of discretion by

the officer will amount necessarily to passing judgment by the court on the conduct of a coordinate branch of government. . . .

(3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer. . . .

(4) The extent to which the ultimate financial responsibility will fall on the officer. . . .

(5) The likelihood that harm will result to members of the public if the action is taken. . . .

(6) The nature and seriousness of the type of harm that may be produced. . . .

(7) The availability to the injured party of other remedies and other forms of relief.

In *Sioux Falls Const. Co.,* we distinguished between discretionary and ministerial factors and examined the actions under which the employee claimed immunity. There, the court examined the employee's failure to either protect the plaintiff's equipment or to inform the plaintiff that he was not protecting the equipment. The court found that none of the above factors even suggested that the employee's decision to not act was a discretionary decision; the employee was exercising a ministerial function and thus, was not immune from suit. In *State v. Ruth, supra,* this court held that an employee's actions were ministerial because:

[The employee] had no alternative but to act. In making the estimate, he was, of course, required to exercise judgment and discretion; but the law did not permit him to decide whether or not any estimate should be made within the time specified by the statute. We think, in failing to act at all, he disregarded a plain provision of the law, and failed to

---

**5.** *Sioux Falls Const. Co. v. City of Sioux Falls,* 297 N.W.2d 454 (S.D.1980), dealt with sovereign immunity available to municipalities. As noted in *High-Grade Oil,* the sovereign immunity rule applied to municipalities differs from the rule applied to the state. The "municipality" rule distinguishes between governmental and proprietary functions, *Sioux Falls Const. Co., supra,* whereas the "state" rule does not. *High-Grade Oil, supra.* Nevertheless, similar factors are examined to determine whether a state employee is immune from liability as an individual. *Kruger v. Wilson, supra.*

perform a merely ministerial duty. It is the nature of the particular duty, and not the character of the office, which determines whether or not a duty is ministerial.

9 S.D. at 91, 68 N.W. at 190–91.

Although we have before us a narrow issue, several other jurisdictions have addressed whether a social worker's functions on the placement, maintenance and care of children in foster care are discretionary or ministerial. These jurisdictions agree that such functions are ministerial and consequently the doctrine of sovereign immunity is not available to bar liability for negligence. *Hanson v. Rowe,* 18 Ariz.App. 131, 500 P.2d 916 (1972); *Elton v. County of Orange,* 3 Cal.App.3d 1053, 84 Cal.Rptr. 27 (1970); *Johnson v. State,* 69 Cal.2d 782, 73 Cal.Rptr. 240, 447 P.2d 352 (1968); *Koepf v. County of York,* 198 Neb. 67, 251 N.W.2d 866 (1977); *Bartels v. County of Westchester,* 76 A.D.2d 517, 429 N.Y.S.2d 906 (1980); see *Ramos v. County of Madera,* 4 Cal.3d 685, 94 Cal.Rptr. 421, 484 P.2d 93 (1971).[6]

In *Elton v. County of Orange, supra,* the California Appellate Court distinguished ministerial functions from discretionary functions in a suit by a foster child, for injuries suffered as a result of physical and mental abuse by foster parents. In holding that a cause of action was stated, the court determined that:

Decisions made with respect to the maintenance, care or supervision of [a foster child], or in connection with her placement in a particular home, may entail the exercise of discretion in a literal sense, but such determinations do not achieve the level of basic policy decisions, and thus do not [warrant immunity].

3 Cal.App.3d at 1058, 84 Cal.Rptr. at 30. Since the acts were ministerial, not discretionary, the defendants were not immune from a suit for negligence.

The Nebraska Supreme Court in *Koepf v. County of York, supra,* also distinguished between ministerial and discretionary functions. *Koepf* involved a suit brought by a mother for the death of her minor child from a beating by a foster parent. As in *Elton, supra,* the court held that decisions involving the placement, maintenance, care or supervision of a child in a foster home are not basic policy decisions and thus do not fall within the discretionary-function exemption to immunity. Most recently, a New York Court agreed with this analysis in *Bartels v. County of Westchester, supra.* In *Bartels,* the court held the actions of county employees in failing to supervise a foster child were ministerial in nature. Consequently, the defendants could not avoid liability for injuries sustained by the child at the hands of the foster parent.

■ In the present case, the actions for which social workers claim immunity involve the placement and follow-up of these children in foster care.[7] The care and

---

**6.** We cite these cases only for the proposition that a social worker's functions in the placement, maintenance and care of children in foster care are ministerial in nature. For a general discussion of governmental tort liability for social service agency's negligence in placement or supervision of children see *Annot.,* 90 A.L.R.3d 1214 (1979).

**7.** We note and reject appellees' contention that our previous opinion in *Merrill v. Birhanzel,* 310 N.W.2d 522 (S.D.1981), held that all state level employees are immune from suit. In *Merrill,* the action was brought against the school district and two teachers. There, we affirmed the summary judgment granted on the basis of sovereign immunity. As we noted in *Merrill,* the teachers were sued in their representative capacity. "The allegations against the defendants Birhanzel and Biehl do not claim personal liability for any wrongful acts in excess of their official authority." *Id.,* at 523 n. 1. There was no evidence that the teachers were sued for personal negligence. As we held in *Dohrman v. Lawrence County,* 82 S.D. 207, 143 N.W.2d 865 (1966), when an employee is sued only in his representative capacity and not in his personal capacity, he was subject to the same immunity protection available to his employer. See *Spielman v. State,* 91 N.W.2d 627 (N.D. 1958). That is the case we had in *Merrill.* Since the defendants were sued only in their capacity as representatives of the school district, they were immune from suit.

Similarly, in *Arndt v. Hannum Trucking,* 324 N.W.2d 680 (S.D.1982), administrator of deceased's estate brought an action against Sommer and Greek in their official capacities as Highway Engineer and District Engineer for the South Dakota Department of Transportation. There were no allegations that Sommer and Greek were personally responsible for the

placement of children is an important function and there is strong likelihood that serious harm will result to members of the public if it is performed incorrectly. *Elton v. County of Orange, supra; Bartels v. County of Westchester, supra.* Although some discretion in its literal sense is involved in foster care, social workers do not make policy decisions involving foster care placement. The criteria for placement and standards for follow-up of foster children are already established. Social workers are merely required to carry out or administer these previously established standards. The placement and follow-up of children in foster care according to preestablished standards is a routine, ministerial function. *Hanson v. Rowe, supra; Elton v. County of Orange, supra; Johnson v. State, supra; Koepf v. County of York, supra; Bartels v. County of Westchester, supra.* Since the actions for which social workers claim immunity are ministerial in nature, we hold that the doctrine of sovereign immunity does not extend to preclude a suit based upon these actions.

We reverse the circuit court's decision that this suit is barred by the doctrine of sovereign immunity and remand this case for trial on its merits.

WOLLMAN and DUNN, JJ., concur.

FOSHEIM, C.J., and ANDERST, Circuit Judge, dissent.

ANDERST, Circuit Judge, sitting for HENDERSON, J., disqualified.

FOSHEIM, Chief Justice (dissenting).

*High-Grade Oil Co., Inc. v. Sommer,* 295 N.W.2d 736 (S.D.1980), and *Sioux Falls Construction Co. v. City of Sioux Falls,* 297 N.W.2d 454 (S.D.1980), are the critical cases involved in the majority opinion.

I do not agree with the majority's interpretation of *High-Grade Oil.* There is language in that case that if the State could be subjected to liability then the State employee is protected by the doctrine of sovereign immunity. However, I believe the holding in *High-Grade Oil* was squarely based on the traditional rule that a governmental employee is protected by the doctrine while performing his duties. In *High-Grade Oil* appellants argued that appellee Sommer, the State Highway Engineer, was acting outside the scope of his employment because he violated certain design safety standards when he designed or approved the design of the highway. In response to appellants' argument this court stated, at 737–38:

> We cannot agree. Under Article XIII, § 9 of our state constitution, construction and maintenance of public highways is a function of state government. The legislature by statute has vested the authority for such construction and maintenance in the Board of Transportation. Appellee is an employee of the Department of Transportation, the operational arm of the Board. Any action on his part in the performance of his duties, whether negligently done or otherwise, clearly is constitutional and is not void. In *White Eagle,* supra, the officers were sued in their official capacities, but the claim was that their actions were premised on an unconstitutional statute.
>
> Considering then, as we must, that this is an action against the state, we next review appellants' attack on the doctrine of 'governmental' or 'sovereign immunity,' which terms are interchangeable. (footnote omitted)

*Sioux Falls Construction* is another matter. While it adopts the rationale of *High-Grade Oil* and other decisions of this court which refused to judicially abolish the doctrine of sovereign immunity, it proceeds to adopt a Restatement definition of immunity based on whether an employee is *acting with discretion. Sioux Falls Construction* adopted this test even though it conceded, at 458,

height of the wire which resulted in deceased's death by electrocution. Rather, the allegation was that Sommer and Greek were officially responsible because their positions provided for overall responsibility of highways. Since

Sommer and Greek were sued only in their representative capacity, they are subject to the same immunity available to their employer, the state.

the possibility of some instances where a city could be immune while exercising a governmental function, yet an officer could be liable; or, in the alternative, a situation where a city could be liable while acting in a proprietary function, yet the officer could be immune.

To uphold governmental immunity as to the governmental unit only, while allowing the officers, agents, and employees to be held liable, would be chaotic. Our adoption of the Restatement's discretion test, in effect, judicially revised the doctrine of sovereign immunity, contrary to this court's consistent position that we would defer to the Legislature. For the reasons stated below, I repudiate my concurrence in the rationale of *Sioux Falls Construction*. The result, however, was correct. *Sioux Falls Construction* concerned a municipal corporation which was denied the benefit of the doctrine of sovereign immunity because it was not engaged in a governmental function, the city employee was likewise denied its benefit.

*Leir* and *Kruger v. Wilson*, 325 N.W.2d 851 (S.D.1982), apply the discretionary test adopted in *Sioux Falls Construction* and the state employees in each case are denied the benefit of the doctrine of sovereign immunity. The practical effect of the discretionary test is that it carves out a broad sector of governmental employees (those whose jobs do not require the use of discretion), who formerly were protected by the sovereign immunity doctrine, and singles them out to be personally liable for their negligence. Who are these employees? They are those least able to pay a personal judgment. Only policy-making employees (whose jobs require the use of discretion), and who therefore are the highest paid government employees, will be allowed to invoke the doctrine to shield themselves from personal liability.

Aside from these inequities, the test's great weakness is that it is so vague and multifaceted that the temptation to manipulate it to reach a desired result can be overwhelming. Witness the result in *Leir*. While their negligence was deplorable, can anyone seriously contend that social workers do not exercise discretion? Also, the

result in *Kruger*—driving a state car on state time is a ministerial function. Can driving a car be considered "ministerial" as that word has heretofore been used in the law?

Prior to *Sioux Falls Construction* this court applied a simple, straight-forward test to determine if the doctrine applied—was the employee acting within the scope of his employment when the injury occurred? Aside from its simplicity, this test treats all governmental employees the same, regardless of their position and earnings. The discretionary test will, in my opinion, lead this court into a quagmire and allow personal liability actions against those least able to pay.

I would affirm the summary judgments entered in *Leir* and *Kruger*.

I am authorized to state that Circuit Judge ANDERST joins in this dissent.