Phyllis KYLLO, Special Administrator
of the Estate of Ervin Peterson,
Plaintiff and Appellee,

v.

Joyce PANZER, Defendant
and Appellant.

Wilma Jean TRELOAR and Michael
Treloar, Plaintiffs and Appellees,

v.

James BLAND, Defendant and Appellant.

Nos. 18713, 18739.

Supreme Court of South Dakota.

Argued Oct. 17, 1994.

Decided Aug. 16, 1995.

Rick Johnson and Stephanie Pochop of Johnson, Eklund, Nicholson, Dougherty and Abourezk, Gregory, for appellee Kyllo.

Edward C. Carpenter of Costello, Porter, Hill, Heisterkamp and Bushnell, Rapid City, and Gerald M. Baldwin, Custer, for appellees Treloar.

Richard J. Helsper and Eric N. Rasmussen of Erickson, Helsper and Rasmussen, Brookings, for appellants.

AMUNDSON, Justice.

State employees appeal the trial courts' denial of summary judgment based on claims of sovereign immunity under SDCL 21–32–17 and 21–32A–2. We affirm.

FACTS

Two cases, with facts strikingly similar, have been consolidated for this appeal. On April 7, 1992, Ervin Peterson (Peterson), age 78, was driving in Pierre, South Dakota. While driving through an intersection, Peterson's car was hit broadside by Joyce Panzer (Panzer), a licensed social worker for the South Dakota Department of Social Services. Eyewitness testimony indicated that Panzer drove through a stop sign before colliding

with the Peterson vehicle. As a result of the accident, Peterson suffered serious injuries to his neck, arm and knee. From the time of his accident until his death in June 1993, Peterson never fully recovered from his injuries. After Peterson's death, Phyllis Kyllo (Kyllo), special administrator of Peterson's estate, was substituted as plaintiff.

Wilma Jean Treloar (Treloar) left work at the South Dakota Developmental Center outside of Custer on March 21, 1992. It was snowing. As she proceeded home on Highway 385, she noticed a state snowplow coming towards her in her lane of travel. To avoid a head-on collision, Treloar pulled to the extreme right portion of her lane. The wheels of her vehicle caught the shoulder drop-off, causing Treloar to lose control of the car. Consequently, Treloar collided with another oncoming vehicle. Among other injuries as a result of the accident, Treloar suffered a broken neck. It has been alleged that the snowplow was traveling at an unsafe rate of speed and was being operated contrary to State Department of Transportation policy.

Plaintiffs in both cases sought to recover damages against the state employees Panzer and Bland (Employees) in their individual capacities. The State was not a party in either lawsuit. Kyllo sought damages exclusively for pain and suffering, since Panzer admitted liability for property damage and medical expenses. Treloar and her husband sought damages for physical injury, pain and suffering and loss of spousal consortium.

Employees asserted affirmative defenses of sovereign immunity under SDCL 21-32-17 and SDCL 21-32A-2 arguing those statutes prevented bringing the actions.[1] Employees moved for summary judgment, contending the only damages available, if any, were for physical injuries through the Public Entity Pool for Liability (PEPL) Fund. This fund, however, excludes coverage for pain and suffering, inconvenience, physical impairment,

disfigurement, loss of society and companionship, and hedonic damages.

During pretrial motion hearings, the trial courts in both cases determined SDCL 21-32-17 and 21-32A-2 unconstitutional in granting immunity for the negligence of state employees conducting ministerial functions within the scope of their employment. Partial summary judgment was granted in favor of Kyllo and Treloar, which denied Employees' claim to immunity. Employees appeal.

## ISSUES

I. WHETHER THE TRIAL COURTS IMPROPERLY DETERMINED THAT SDCL 21-32-17 AND 21-32A-2 ARE UNCONSTITUTIONAL TO THE EXTENT THEY PURPORT TO LIMIT DAMAGES FOR A STATE EMPLOYEE'S NEGLIGENCE WHEN PERFORMING "MINISTERIAL" ACTS?

II. WHETHER THE TRIAL COURTS IMPROPERLY DENIED EMPLOYEES THE BENEFIT OF SOVEREIGN IMMUNITY?

III. WHETHER THE TRIAL COURTS IMPROPERLY DETERMINED THAT EMPLOYEES' OPERATION OF STATE VEHICLES AS A MATTER OF LAW WAS A MINISTERIAL FUNCTION?

## STANDARD OF REVIEW

■ The proper construction to be given a constitutional provision is a question of law. *Poppen v. Walker*, 520 N.W.2d 238, 241 (S.D. 1994); *Dahl v. Sittner*, 474 N.W.2d 897, 899 (S.D.1991). The standard of reviewing the constitutionality of a statute is de novo.

---

1. SDCL 21-32-17 provides in pertinent part:

[A]ny employee, officer or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity.
SDCL 21-32A-2 provides:

Except insofar as a public entity, including the state, participates in a risk sharing pool or insurance is purchased pursuant to § 21-32A-1, any employee, officer or agent of the public entity, including the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity....

*Brown v. Egan Consol. School D. 50–2*, 449 N.W.2d 259, 260 (S.D.1989).

We have held that "a strong presumption as to the constitutionality of [a] statute and that the burden is upon [Kyllo and Treloar] to prove that the statute—or to satisfy the court [that] the statute is unconstitutional." *Specht v. City of Sioux Falls*, 526 N.W.2d 727, 729 (S.D.1995). The party challenging constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision. *Id.*

We must also be reminded of basic constitutional law reiterated in *State ex rel. Wagner v. Summers*, 33 S.D. 40, 49, 144 N.W. 730, 732 (1913):

It is elementary that the legislative power of the Legislature is unlimited except as it is limited by the state Constitution and federal Constitution.

It is also elementary that while the federal Constitution is viewed as a grant of power to Congress, the state Constitution is not a grant of power, but is a limitation upon the powers of the Legislature.

*Oien v. City of Sioux Falls*, 393 N.W.2d 286, 290 (S.D.1986) (citations omitted).

## DECISION

Employees argue SDCL 21–32–17 and 21–32A–2 are constitutionally valid as appropriate measures to curtail state employees' liability. They claim the legislature is free to limit remedies if it deems such action necessary for the public good. They also reason that, since the ministerial/discretionary dichotomy of governmental functions did not exist at the time the South Dakota Constitution was adopted, state employees who commit torts while in the scope of employment are protected by the state's sovereign immunity. Under this rationale, SDCL 21–32–17 and 21–32A–2 do not conflict with the "open courts" provision of the South Dakota Constitution.

### I. History of Personal Liability under Sovereign Immunity

Although it is sometimes said that sovereign immunity was "created" by Article III, § 27, of the South Dakota Constitution, it is in fact a concept of the common law. *High-Grade Oil Co. v. Sommer*, 295 N.W.2d 736, 739 (S.D.1980). Sovereign immunity from tort liability can be traced back to England. Stuart M. Speiser, Charles F. Frause, & Alfred W. Gans, *The American Law of Torts* § 6.31 (1985). With the burgeoning of the parliamentary system in England, the notion developed that, while "the king himself could not be charged with wrongdoing, his ministers were personally responsible when they acted illegally." *Id.* Causes of action were allowed against public officials.[2] Although actions against high officials were few, cases against inferior officers were numerous.[3]

Personal liability of government employees continued in the development of American common law. The United States Supreme Court, in *Osborn v. The Bank*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824), held state officers liable by holding a state treasurer personally accountable to return tax moneys which were improperly levied on a bank. The treasurer was personally accountable for ignoring an injunction which prohibited collection against the bank. *Id.* at 847; *see* Louis L. Jaffe, *Suits against Governments and Officers: Sovereign Immunity*, 77 Harv. L.Rev. 1, 21 (1963). The Colorado Supreme Court, in *Kristensen v. Jones*, 195 Colo. 122, 575 P.2d 854 (1978), recognized that:

An injured person's right to sue the negligent employee of an immune public entity derives from the common law, and we will not lightly infer a legislative abrogation of

---

2. One of the earliest cases against higher officers of the Crown was *Entick v. Carrington* (1765, KB) 2 Wils 275, 95 Eng Reprint 708, which allowed a trespass action against the Earl of Halifax, a Lord of the Privy Council, and one of his principal Secretaries of State, for issuing an improper warrant to break into plaintiff's house. Louis L. Jaffe, *Suits against Governments and Officers: Sovereign Immunity*. 77 Harv.L.Rev. 1, 9–16 (1963).

3. " '[E]very official, from the Prime Minister down to a constable or a collector of taxes, is under the same responsibility for every act done without legal justification as any other citizen. The Reports abound with cases in which officials have been brought before the Courts, and made, in their personal capacity, liable to punishment, or to the payment of damages ...' " *Jaffe, Suits against Governments*, 77 Harv.L.Rev. at 15 (quoting Dicey, Law of the Constitution 189 (8th ed. 1923)).

that right absent a clear expression of intent.

*Id.* at 855 (citing *Collard v. Hohnstein,* 64 Colo. 478, 174 P. 596 (1918)). The *Kristensen* court held negligent operators of public vehicles fell within the common law scope of personal liability. *Id.; see generally* Prosser, Torts § 132 (4th Ed.1971). "Public employees generally have been personally liable for injuries caused by their negligent actions within the scope of employment even when the defense of sovereign immunity was available to their employers." *Kristensen* 575 P.2d at 855 (citations omitted).

The right to sue and recover for others' negligence existed at the time of the adoption of the South Dakota Constitution. *Oien,* 393 N.W.2d at 290. South Dakota's first negligence statute, codified at SDCL 20–9–1, was enacted in 1877, twelve years prior to the birth of our state constitution in 1889. This statute provides in part: "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill[.]" SDCL 20–9–1.

South Dakota's common law right to action for damages, codified at SDCL 21–1–1, was enacted the same year as the negligence statute. It provides: "Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages. Detriment is a loss or harm suffered in person or property."

This rule of law that a public employee is liable for negligently performed ministerial acts was first recognized by this court in *State v. Ruth,* 9 S.D. 84, 90, 68 N.W. 189, 190 (1896), seven years after the adoption of the South Dakota Constitution. Moreover, this court has long recognized a right to recover damages for pain and suffering resulting from negligent acts. *See, e.g., Small v. McKennan Hospital,* 437 N.W.2d 194 (S.D.

1989); *Pollman v. Ahrens,* 88 S.D. 249, 218 N.W.2d 475 (1974); *Egan v. Sheffer,* 86 S.D. 684, 201 N.W.2d 174 (1972); *Koenig v. Weber,* 84 S.D. 558, 174 N.W.2d 218 (1970); *Hoekstra v. Helgeland,* 78 S.D. 82, 98 N.W.2d 669 (1959); *Davis v. Holy Terror Min. Co.,* 20 S.D. 399, 107 N.W. 374 (1906).

Employees refute this history of personal liability by saying the legislature has "clearly spoken to abrogate employee liability" by enacting the two South Dakota statutes at issue; namely, SDCL 21–32–17 and 21–32A–2. In order for meaningful review, we must examine the history of those provisions in conjunction with the laws protecting an injured party's right to a remedy.

In 1981, the legislature enacted SDCL 21–32–15 [4] and 21–32–16 [5] authorizing the State of South Dakota to purchase public liability insurance. State waived sovereign immunity and consented to suit up to the insurance policy limits. In 1983, the legislature enacted SDCL 21–32–17, expanding the scope of sovereign immunity, except as waived under SDCL 21–32–16. This expansion broadened immunity to all officers, employees, or agents of the State, acting within the scope of their employment, whether or not they were performing ministerial or discretionary functions.

In 1985, when the State was notified that its public liability insurance was cancelled, the governor requested an advisory opinion regarding the constitutionality of SDCL 21–32–17 if the State were to establish its own fund to pay claims. *In re Request for Opinion of the Supreme Court,* 379 N.W.2d 822 (S.D.1985). This court held the legislature could act within the broad authority of Art. III, § 27, of the South Dakota Constitution to impose limitations and conditions of the operation of sovereign immunity. *Request for Opinion,* 379 N.W.2d at 825–26. In rendering its decision, however, the court limited its consideration to the sovereign immuni-

---

4. SDCL 21–32–15 provides:
   The state of South Dakota, through the commissioner of administration, may obtain and pay for public liability insurance to the extent and for the purposes considered expedient by the commissioner for the purpose of insuring the liability of the state, its officers, agents or employees.

5. SDCL 21–32–16 provides:

To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

ty doctrine under Art. III, § 27. The "open courts" provision was not addressed in this opinion.

This court further held the state's participation in a risk-sharing pool did not waive sovereign immunity under SDCL 21–32–16, because, although self-insurance through a risk-sharing pool may accomplish the same purpose as commercial insurance, the plain language of the above statute required the purchase of traditional liability insurance. *Request for Opinion* at 827. *See also Wilson v. Hogan*, 473 N.W.2d 492, 495 (S.D.1991). Thus, unless such traditional insurance was purchased, SDCL 21–32–15 and 21–32–17 provide absolute sovereign immunity to "any employee, officer or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary." Immunity existed regardless of whether the employee was sued in an individual or official capacity.

In 1986, the legislature enacted SDCL 21–32A–1, –2, and –3, establishing the procedure for bringing claims against public entities, other than the state, and waiving immunity to the extent of participation in a risk-sharing pool or the purchase of liability insurance. In 1991, SDCL 21–32A–2 was amended to include the state, and its "employees, officers, or agents," in its statutory waiver of sovereign immunity to the extent of participation in a risk-sharing pool or purchase of insurance. Chapter 3–22, enacted in 1986, established the public entity pool for liability (PEPL). It is presumed this fund was established as a substitute for traditional liability insurance.

SDCL 3–22–18 [6] provides that "PEPL does not constitute insurance" but is instead a liability pool.[7] The PEPL fund's purpose is to provide "the sole source for payment of valid tort claims against all member public entities of the state and their officers and employees for all liability they may incur based upon negligence in the operation of motor vehicles or negligence in performing other acts within an employee's scope of employment[.]" SDCL 3–22–1. The PEPL fund provides no payment for, among other things, "non-economic damages, including, but not limited to, damages for pain, suffering, inconvenience, physical impairment, disfigurement, loss of society and companionship, and hedonic damages[.]" The Public Entity Pool for Liability, *Memorandum of Liability Coverage to the Employees of the State of South Dakota*, Apr. 4, 1990. Under the current statutory scheme, unless a claim falls within PEPL fund coverage, the doctrine of sovereign immunity applies to abrogate that claim.

## II. Article VI, § 20 of the South Dakota Constitution

In tandem with the legislative attempt to limit state liability is a history of providing injured citizens access to the courts. The promise of free and speedy justice in open court has been traced to the Magna Carta. *See* Thomas S. Luby, *Constitutionally Incorporated Common Law—the Connecticut Remedy Clause Limits Legislative Abridgement of Plaintiff's Rights: Gentile v. Altermatt*, 8 Conn.L.Rev. 753, 757 n. 26 (1976). Article VI, § 20, of the South Dakota Constitution provides:

> All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.

Courts have generally determined the intent behind constitutional "open courts" provisions is "to preserve the common-law right of action for injury to person or property[.]" *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932); *Landis v. Campbell*, 79 Mo. 433, 49 Am.Rep. 239 (1883); *Stewart v. Houk*, 127 Or. 589, 271 P. 998 (1928), *reh'g denied*, 127 Or. 589, 272 P. 893, 61 A.L.R. 1236 (1978);

---

6. SDCL 3–22–18 provides: "The PEPL does not constitute insurance nor may it be considered an insurance company under the laws of South Dakota nor is the PEPL under the jurisdiction of the commissioner of insurance."

7. Under this court's decision in *Request for Advisory Opinion*, 379 N.W.2d 822 (S.D.1985), PEPL would not qualify as liability insurance to waive sovereign immunity under SDCL 21–32–16; therefore, SDCL 21–32–17 purports to grant absolute and complete immunity. However, under the 1991 amendment to SDCL 21–32A–2, PEPL would represent an effective waiver of sovereign immunity as a "risk-sharing pool."

*Mattson v. City of Astoria,* 39 Or. 577, 577, 65 P. 1066, 1067 (1901); *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951 (1955); *Taylor v. Hubbell,* 188 F.2d 106 (9th Cir.), *cert. denied by* 342 U.S. 818, 72 S.Ct. 32, 96 L.Ed. 618 (1951).

In 1901, the Oregon Supreme Court, in *Mattson,* 65 P. at 1067, held that an "open courts" provision incorporated all common-law rights established prior to the enactment of that state's constitution. The *Mattson* court cited this court's decision of *McClain v. Williams,* 10 S.D. 332, 73 N.W. 72 (1897), to support its proposition that although "the legislature may change the remedy or the form of procedure, attach conditions precedent to its exercise, [or] perhaps abolish and substitute new remedies, it cannot deny a remedy entirely." *Mattson,* 65 P. at 1067.

Similarly, this court, in *Simons v. Kidd,* 73 S.D. 41, 46, 38 N.W.2d 883, 886 (1949), interpreted the "open courts" provision as a "guarantee that 'for such wrongs as are recognized by the laws of the land the courts shall be open and afford a remedy.'" *Id.* (quoting *Mattson,* 39 Or. at 577, 65 P. at 1067). In *Bego v. Gordon,* 407 N.W.2d 801 (S.D.1987), the court reaffirmed the right with regard to negligent actors:

> Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or ... want of ordinary care ... SDCL 20-9-1. The remedy provided by common law and by

this statute is supported not only by the "open courts" provision but by other substantial constitutional provisions.[8] *Id.* at 806.

■ Employees contend that this court's decisions interpreting the open courts provision have improperly "elevated" common-law remedies over the legislature's ability to alter those remedies. *See Daugaard v. Baltic Co-op. Bldg. Supply Ass'n,* 349 N.W.2d 419 (S.D. 1984); *Bego, supra;* and *Baatz v. Arrow Bar,* 426 N.W.2d 298 (S.D.1988). We do not agree. The function of this court is to interpret the laws as they affect the "life, liberty, or property of the citizens of the State." *Baatz,* 426 N.W.2d at 303 (citing Cooley's Constitutional Limitations 191 (8th ed. 1927)). Although the legislature has the authority to limit available remedies, especially when they purport to reach state coffers, it is our responsibility to ensure access to the courts as guaranteed by our state constitution.

### III. Reconcilable South Dakota Case Law

South Dakota case law, albeit muddied at times, attempts to hold a delicate balance between the common-law tradition of open courts and the doctrine of sovereign immunity. Reviewing this authority, this court has tried to refine state employee exposure to liability by establishing categories of functions for which liability falls. Those functions are labelled either as ministerial or discretionary, and seemingly existed before the *Ruth* decision.[9] *See Sioux Falls Const.*

---

8. These other constitutional provisions relied upon in *Bego v. Gordon,* 407 N.W.2d 801 n. 6 (S.D.1987), are from Art. VI of the South Dakota Constitution.
§ 1. *Inherent rights.* All men have certain inherent rights including enjoying and defending life and liberty, acquiring and protecting property and the pursuit of happiness.
§ 2. *Due Process.* No person shall be deprived of life, liberty, or property without due process of law.
§ 12. *Privilege or immunity laws.* No law granting an irrevocable privilege, franchise or immunity shall be passed.

9. Discretionary acts are defined as "those acts wherein there is no hard and fast rule as to course of conduct that one must or must not take and, if there is clearly defined rule, such would eliminate discretion. Black's Law Dictionary 467 (1990). The Restatement Second of Torts § 895D provides that discretionary functions involve the process of administering government,

which requires that officers and employees determine a course of action to carry out the purpose for which they are charged. "The basis of the immunity [for discretionary functions] has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." *Id.*
Ministerial acts, on the other hand, are defined as "that which involves obedience to instructions, but demands no special discretion, judgment, or skill." Black's Law Dictionary 996 (1990). In discussing ministerial functions, the Restatement Second provides: "If an act of the official involves less in the way of personal decision or judgment or the matter for which judgment is required has little bearing of importance upon the validity of the act ... Ministerial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how or under what circumstances

*Co. v. City of Sioux Falls*, 297 N.W.2d 454 (S.D.1980).

In *National Bank of South Dakota v. Leir*, 325 N.W.2d 845 (S.D.1982), this court explained the distinction between the two classifications in conjunction to liability. This court stated, "[immunity] extends to a governmental employee who, while acting within the scope of his employment, exercises a discretionary function." *Id.* at 848 (citations omitted). State employees are cloaked in sovereign immunity when performing discretionary acts because "such discretionary acts participate in the state's sovereign policy-making power." *Ritter v. Johnson*, 465 N.W.2d 196, 198 (S.D.1991). Factors to be considered in determining a discretionary function are:

(1) The nature and importance of the function the officer is performing;

(2) The extent to which passing judgment on the exercise of discretion by the officer will amount necessarily to passing judgment by the court on the conduct of a coordinate branch of government;

(3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer;

(4) The extent to which the ultimate financial responsibility will fall on the officer;

(5) The likelihood that harm will result to members of the public if the action is taken;

(6) The nature and seriousness of the type of harm that may be produced;

(7) The availability to the injured party of other remedies and other forms of relief.

*Leir,* 325 N.W.2d at 848 (citing Restatement (Second) of Torts, § 895D, comment f (1979)). Furthermore, this court has consistently held sovereign immunity barred a cause of action against the state where the state was the real party in interest. *High Grade Oil,* 295 N.W.2d 736; *Wisc. Granite Co. v. State,* 54 S.D. 482, 223 N.W. 600 (1929).

Nevertheless, *Leir* reaffirmed the co-existence of case precedent holding employees responsible for their negligence in performing ministerial tasks. It stated, "a state employee who 'fails to perform a merely ministerial duty, is liable for the proximate results of his failure to any person to whom

their acts are to be done." *Id.* An example is

he owes performance of such duty.'" *Leir,* 325 N.W.2d at 848 (citing *Conway v. Humbert,* 82 S.D. 317, 145 N.W.2d 524 (1966); *Walters v. City of Carthage,* 36 S.D. 11, 153 N.W. 881 (1915); *Ruth,* 9 S.D. at 90, 68 N.W. at 190). The court ultimately held employees liable for the consequences of their negligent acts. *Leir,* 325 N.W.2d at 848–49.

This court, in defining ministerial acts in *Ritter,* explained that "a ministerial act is the simple carrying out of a policy already established ... so that permitting state employees to be held liable for negligence in the performance of merely ministerial duties within the scope of their authority does not compromise the sovereignty of the state." *Ritter,* 465 N.W.2d at 198 (citations omitted).

In *Kruger v. Wilson,* 325 N.W.2d 851 (S.D. 1982) this court held a state employee liable for negligently driving a car within the course of employment. The facts of *Kruger* are similar to the cases at bar. The employee defendant was driving a state vehicle when she struck the plaintiff's car. *Id.* at 852. The plaintiff sued the employee individually, and the state was not a party. Although the statutes at issue here were not enacted at the time of *Kruger,* the employee defendant still claimed protection from suit under sovereign immunity. *Id.*

The *Kruger* court recognized the plaintiff's right to sue, and held that immunity does not extend to personal negligence in operating a motor vehicle. *Id.* at 853. In its decision, the court again considered the factors in the Restatement (Second) of Torts § 895D to establish that driving a motor vehicle was a ministerial function.

As this court expressed in *Bego,* the common law recognizes that merely being an agent or employee does not alter the duties one owes to third parties. 407 N.W.2d at 805 (citations omitted).

'Everyone, whether he is principal or agent, is responsible directly to persons injured by his own negligence in fulfilling obligations resting upon him in his individual character and which the law imposes upon him, independent of contract. No man increases or diminishes his obligations to strangers by becoming an agent. If, in

**driving vehicles.** *Id.* (Emphasis added.)

the course of his agency, he comes in contact with the person or property of a stranger, he is liable for any injury he may do to either, by his negligence, in respect to duties imposed by law upon him in common with all other[s].'

*Id.* (quoting *Kelly v. State*, 265 Ark. 337, 578 S.W.2d 566, 567 (1979)). Considering common-law principals in light of constitutional guarantees, the court in *Bego* held that sovereign immunity did not extend to a state employee absent the state being the real party in interest, or the employee being engaged in a discretionary function. *Id.* at 806.

■ It is inconceivable that driving a motor vehicle is anything other than a ministerial function. Regardless of state employment, Employees still owed the same duty of care to drive safely as any other driver not so employed. Employees' claimed immunization from suit does not extend to negligent individuals in any other sector of employment. The legislature cannot extend it to negligent individuals who work for the state. Although we agree that state employees performing discretionary, "policy making" functions should be covered by immunity for the consequences resulting from their decisions, that is simply not the case here. Instead, what exists is injury resulting from the alleged negligent operation of a motor vehicle. It has been stated:

Negligence law must have some degree of flexibility. However, it is an entirely different and unacceptable proposition to assume that the flexibility of our negligence law may act in degradation of the fundamental foundation of our state constitution. Our constitution ... is solid core upon which all our state laws must be premised. Clearly and unequivocally, our constitution directs that the courts of this state shall be open to the injured and oppressed. We are unable to view this constitutional mandate as a faint echo to be skirted or ignored.

*Daugaard*, 349 N.W.2d at 425 (citations omitted). The common law of negligence existed well before the South Dakota Constitution, as did employees' personal liability for their wrongful conduct. The legislature does not have the authority to wholly abrogate such common-law actions guaranteed by the constitution. *Baatz.* 426 N.W.2d at 302. It therefore can impose only reasonable restrictions that do not infringe on these protected rights. *Id.* at 304. Considering the history of sovereign immunity, the common law of negligence and the South Dakota Constitution, we agree that SDCL 21–32–17 and 21–32A–2 are unconstitutional so far as they extend sovereign immunity to state employees performing ministerial functions. We affirm.

MILLER, C.J., and SABERS and KONENKAMP, JJ., concur.

WUEST, Retired J., participated in the oral argument of this case but not in the final decision.

GILBERTSON, J., not having been a member of the Court at the time this case was considered, did not participate.