Unified Judicial System

 

 
 Courtesy of The State Bar of South Dakota and
South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501
In the Matter of the Certification of Questions of Law from the
United States Court of Appeals for the Eighth Circuit,
Pursuant to the Provisions of SDCL 15-24A-1,
and concerning federal action 
WILLIAM KNOWLES and JANE KNOWLES,
on behalf of themselves and as guardians of their minor son, Kris Knowles,
Plaintiffs,
v.
UNITED STATES OF AMERICA,
Defendant. 
ORIGINAL PROCEEDING
#18838 
John J. Delaney, Johnson Huffman, P.C., Rapid City, SD
Attorneys for plaintiffs. 
Bonnie P. Ulrich, Craig Peyton Gaumer
Assistant U.S. Attorneys Office, Sioux Falls, SD
Attorneys for defendant. 
Mark Barnett, Attorney General
Sherri Sundem Wald, Assistant Attorney General, Pierre, SD
Attorneys for Amicus Curiae State of South Dakota. 
Timothy M. Engel, May, Adam, Gerdes & Thompson, Pierre, SD
Attorney for Amicus Curiae
South Dakota State Hospital Association
and South Dakota State Medical Association. 
Argued Feb 14, 1995; Opinion Filed Jan 31, 1996 
[Â¶1] Justice Richard W. Sabers delivers the majority opinion of the Court on the result of unconstitutionality of the damages cap of SDCL 21-3-11 based on due process and on questions 3 and 4. 
[Â¶2] Justice David Gilbertson delivers the majority opinion of the Court on the rationale for unconstitutionality and on the revival of the 1985 version of SDCL 21-3-11 and on question 2. 
SABERS, Justice 
[Â¶3] SABERS, Justice, writing the majority opinion on the result of unconstitutionality of the damages cap of SDCL 21-3-11 based on due process and on questions 3 and 4. 
[Â¶4] Parents brought suit for severe injuries suffered by minor son while under care of Air Force hospital. The United States admitted liability and invoked the $1 million cap on medical malpractice damages. The federal district court held the cap was constitutional under the South Dakota and United States [96 SDO 54] Constitutions. On appeal to the Eighth Circuit Court of Appeals, four certified questions were presented and accepted by the South Dakota Supreme Court. For the reasons set forth herein, we hold that the damages cap of SDCL 21-3-11 is unconstitutional. 
FACTS 
[Â¶5] Kris Knowles was twelve days old when he was admitted for treatment of a fever at the Ellsworth Air Force Base Hospital, near Rapid City, South Dakota. Medical Service Specialists, the Air Force's equivalent to nurses' aides, recorded Kris' temperature. On the night before his discharge, the specialists failed to report to nurses or physicians that Kris' temperature had been dropping throughout that night. Kris developed hypoglycemia and suffered respiratory arrest resulting in severe, permanent brain damage. 
[Â¶6] William and Jane Knowles brought suit on their own behalf and for Kris for medical malpractice, emotional distress, and loss of consortium. The United States admitted liability for medical malpractice and filed a motion for entry of judgment of $1 million based on SDCL 21-3-11,{1} which limits damages in medical malpractice actions to $1 million. In Knowles v. U.S., 829 FSupp 1147, 1157 (DSD 1993), the United States District Court of South Dakota, Western Division, (district court) ruled that SDCL 21-3-11 was constitutional and entered judgment for $1 million. Knowles appealed. The Eighth Circuit Court of Appeals certified four questions to this court, which we accepted: 

1. Is the SDCL 21-3-11 damages cap unconstitutional under South Dakota's Constitution? Specifically, is it violative of any of the following portions of the South Dakota Constitution: SDConst Art VI, Â§6, the right to a jury trial; SDConst Art VI, Â§Â§2 and 18, due process and equal protection of law; SDConst Art VI, Â§20, the open-courts and remedy-for-injury provision; or SDConst Art III, Â§23(9), forbidding certain special legislation? 

2. Are Medical Service Specialists "practitioners of the healing arts" for purposes of SDCL 21-3-11? 
The district court answered in the affirmative. Knowles, 829 FSupp at 1151. 

3. Does South Dakota law recognize emotional distress or loss of consortium for injuries to a minor child as a separate cause of action? 
The district court determined that there was only one cause of action for the purpose of its decision. Id. at 1152-53. 

4. Does the statutory limitation on damages apply separately to each of the three plaintiffs in this case and each of the two separate causes of action? 
The district court answered in the negative. Id. at 1152. 
[Â¶7] Question 1: Is the SDCL 21-3-11 damages cap unconstitutional under South Dakota's Constitution? 

There is a strong presumption that the laws enacted by the Legislature are constitutional and that presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. 
Specht v. City of Sioux Falls, 526 NW2d 727, 729 (SD 1995) (citations omitted). 
[Â¶8] Initially, we note that many courts have [96 SDO 55] invalidated limitations on damages based on their respective state constitutions. Moore v. Mobile Infirmary Ass'n, 592 So2d 156, 158 (Ala 1991) (citing Smith v. Dep't. of Ins., 507 So2d 1080 (Fla 1987) (invalidating a damages cap on personal injury awards); Wright v. Central Du Page Hosp. Ass'n, 347 NE2d 736 (Ill 1976); Brannigan v. Usitalo, 587 A2d 1232 (NH 1991); Carson v. Maurer, 424 A2d 825 (NH 1980); Arneson v. Olson, 270 NW2d 125 (ND 1978); Morris v. Savoy, 576 NE2d 765 (Ohio 1991); Lucas v. United States, 757 SW2d 687 (Tex 1988); Condemarin v. Univ. Hosp., 775 P2d 348 (Utah 1989); Sofie v. Fibreboard Corp., 771 P2d 711 (Wash 1989) (amended by 780 P2d 260 (Wash 1989)) (invalidating a damages cap on all personal injury actions)). 
[Â¶9] Other jurisdictions have upheld a damages cap: Moore, 592 So2d at 158 (citing Fein v. Permanente Medical Group, 38 Cal3d 137, 211 CalRptr 368, 695 P2d 665 (Calif 1985); Johnson v. St. Vincent Hosp., Inc., 404 NE2d 585 (Ind 1980); Samsel v. Wheeler Transp. Serv., Inc., 789 P2d 541 (Kan 1990)) (modified on statutory grounds by Bair v. Peck, 811 P2d 1176, 1191 (Kan 1991); Etheridge v. Medical Center Hosp., 376 SE2d 525 (Va 1989)). See also Carol A. Crocca, Validity, Construction, and Application of State Statutory Provisions Limiting Amount of Recovery in Medical Malpractice Claims, 26 ALR5th 245 (1995); Gary D. Jensen, Legislative Larceny: The Legislature Acts Unconstitutionally When It Arbitrarily Abolishes or Limits Common Law Rights to Redress for Injury, 31 SDLRev 82, 82 (1985) ("Much of the [protectionist legislation for health care providers] has been struck down as unconstitutional."). 
[Â¶10] However, the questions presented herein generally turn on the particular constitutional provisions of the state and the case law precedent interpreting those provisions. Because the provisions of the South Dakota Constitution guaranteeing the right to jury trial, open courts and due process are dispositive, we do not reach the other constitutional questions. 
SDCL 21-3-11 violates the right of trial by jury. 
[Â¶11] South Dakota Constitution article VI, Â§6 guarantees the right of trial by jury: 

The right of trial by jury shall remain inviolate and shall extend to all cases at law without regard to the amount in controversy[.] 
(Emphasis added); see SDCL 15-6-38(a) ("The right of trial by jury ... shall be preserved to the parties inviolate.") (emphasis added). "Inviolate" has been defined as "free from change or blemish: pure, unbroken ... free from assault or trespass: untouched, intact[.]" Sofie, 771 P2d at 721-22 (citing Webster's New Third International Dictionary, 1190 (1976)). In discussing the role of the jury, the United States Supreme Court has stated: 

Maintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care. 
Dimick v. Schiedt, 293 US 474, 486, 55 SCt 296, 301, 79 LEd 603, 611 (1935) (assessment of damages is a "matter so peculiarly within the province of the jury[.]"). 
[Â¶12] "A jury is the tribunal provided by law to determine the facts and to fix the amount of damages." Schaffer v. Edward D. Jones & Co., 521 NW2d 921, 927 n9 (SD 1994) (citation omitted). "[T]he amount of damages to be awarded is a factual issue to be determined by the trier of fact[.]" Sander v. The Geib, Elston, Frost Pro. Ass'n, 506 NW2d 107, 119 (SD 1993) (citation omitted). With any jury award for personal injuries, we "have allowed [the jury] 'wide latitude'" in [96 SDO 56] making its award. Id. (citation omitted). 

We are unwilling to allow the trial court authority to limit a damages award as a matter of law ... A jury determination of the amount of damages is the essence of the right to trial by jury--to go beyond the procedural mechanisms now in place [remittitur] for reduction of a verdict and to bind the jury's discretion is to deny this constitutional right. 
Moore, 592 So2d at 161 (citation omitted) (emphasis in original). The damages cap is unconstitutional because it limits the jury verdict "automatically and absolutely" which makes the jury's function "less than an advisory status." Id. at 164 (emphasis in original). 
[Â¶13] SDCL 21-3-11 arbitrarily and without a hearing imposes a limitation of one million dollars on all damages in all medical malpractice actions. It does so without provisions for determining the extent of the injuries or resulting illness, or whether these injuries or illness resulted in death. It purports to cover even those cases where the medical costs occasioned by the malpractice alone exceed one million dollars. In other words, the damages recovered in these cases could actually be payable to the wrongdoers for medical expenses, not to the victims. It does so in all cases, even when a judicial determination of damages above one million dollars results from an adversarial hearing after notice. 
[Â¶14] Five states whose constitutions provide that the right of trial by jury shall remain "inviolate" have invalidated damages caps. Sofie, 771 P2d at 723 (citing Kansas (see Kansas Malpractice Victims Coalition v. Bell, 757 P2d 251 (Kan 1988) (modified on statutory grounds by Bair, 811 NW2d at 1191); Texas (Lucas, 757 SW2d at 692); Ohio (see Duren v. Suburban Community Hosp., 495 NE2d 51 (Ohio CP 1985); and Florida (see Smith, 507 So2d at 1095)). 
[Â¶15] In Sofie, 771 P2d at 722, the Washington Supreme Court considered whether a personal injury damages cap violated the right of a jury trial. Washington's constitutional provision uses the same language as South Dakota Constitution article VI, Â§6. Id. ("The right of trial by jury shall remain inviolate"). 

For such a right to remain inviolate, it must not diminish over time and must be protected from all assaults to its essential guarantees... . [T]hose guarantees include allowing the jury to determine the amount of damages in a civil case. 
Sofie, 771 P2d at 722 (citation omitted). 
[Â¶16] The Kansas Supreme Court considered the former distinctions between equity and legal actions in a challenge to its medical malpractice damages cap. Bell, 757 P2d at 258 (upholding the validity of a statute which eliminated vicarious liability in medical malpractice actions)). In actions for equity which did not request monetary damages, a plaintiff was not entitled to a jury trial. However, in a legal action for money damages, a plaintiff had a right to a jury trial unless waived. Id. A medical malpractice damages cap is "an infringement on the jury's determination of the facts, and, thus, is an infringement on the right to a jury trial." Id. The court concluded that "[i]t would be illogical for this court to find that a jury, empaneled because monetary damages are sought, could not then fully determine the amount of damages suffered." Id. 
[Â¶17] In Smith, 507 So2d at 1088-89, the Florida Supreme Court held that a plaintiff whose personal injury recovery is arbitrarily capped is not "receiving the constitutional benefit of a jury trial[.]" The court held that the recovery cap infringed upon a constitutional right and the legislature may not restrict it merely because it deems it rational. [96 SDO 57] Id. at 1089. The court further held that the legislature must provide a "commensurate benefit" to the tort victim, which it had not. Id. 
[Â¶18] For these reasons, we hold that the damages cap violates the right to a jury trial under South Dakota Constitution article VI, Â§6. 
SDCL 21-3-11 violates SDConst Art VI, Â§20, the open courts and remedy-for-injury provision. 
[Â¶19] South Dakota Constitution article VI, Â§20 requires that the courts remain open and every man for an injury done him "shall have remedy by due course of law, and right and justice, administered without denial or delay." Under SDCL 21-3-11, "practitioners of the healing arts" would be responsible for only a portion of the injuries caused by their negligence when the damages exceed one million dollars. In Bell, 757 P2d at 263, the Kansas Supreme Court invalidated a damages cap, noting that "the right to a remedy means the right to a full remedy[.]" (emphasis in original). Other courts have also held that the damages cap violates their respective states' open courts provisions. Smith, 507 So2d at 1088; Lucas, 757 SW2d at 692. 
[Â¶20] One study found that "there is no relationship between a damage cap and increases in insurance rates thereby reducing available health care, given that less than 0.6% of all claims brought are for over $100,000." Lucas, 757 SW2d at 691 (citation omitted). The Lucas court held that the damages cap violated the Texas constitution's open courts provision. Id. at 692. 
[Â¶21] In Smith, 507 So2d at 1088-89, the Florida Supreme Court held that "[a]ccess to courts is granted for the purpose of redressing injuries. A plaintiff who receives a jury verdict for [greater than the cap] has not received a constitutional redress of injuries if the legislature statutorily, and arbitrarily, caps the recovery[.]" In other words, a victim who was hospitalized for life and whose economic damages exceeded the $1 million cap, might receive no compensation for all other damages.{2} 
[Â¶22] The general law applicable in this case is SDCL 20-9-1 which provides: 

Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence. 
[Â¶23] SDCL 20-9-1 is a simple codification of the common law of negligence. In essence, then, the South Dakota Constitution and existing statutory law provide that an injured person has a right to a remedy against a wrongdoer. Baatz v. Arrow Bar, 426 NW2d 298, 304 (SD 1988) (citing Zacher v. Budd Co., 396 NW2d 122 (SD 1986); Oien v. City of Sioux Falls, 393 NW2d 286 (SD 1986); Daugaard v. Baltic Co-op Bldg. Supply Ass'n, 349 NW2d 419 (SD 1984)). Therefore, under SDCL 20-9-1, and subsequent case law, a person is responsible for injuries caused by his want of ordinary care or skill. 
[Â¶24] This court recently addressed the South Dakota "open courts" provision in Kyllo v. Panzer, 535 NW2d 896 (SD 1995). We noted that state law made employees responsible for their torts notwithstanding the protections of sovereign immunity: 

Regardless of state employment, Employees still owed the same duty of care [96 SDO 58] to drive safely as any other driver not so employed. Employees' claimed immunization from suit does not extend to negligent individuals in any other sector of employment. The legislature cannot extend it to negligent individuals who work for the state. 
Kyllo, 535 NW2d at 903. 
[Â¶25] Knowles' situation is similar to those injured by negligent state employees who would have been immune from lawsuits if the statute were constitutional. Physicians owe a duty of care to patients in their positions as health care providers. 
[Â¶26] SDCL 20-9-1 makes each person liable for damage to others in tort without limitation on the amount of the injury. SDCL 21-3-11 attempts to carve a special exception for practitioners of the healing arts. While the legislature has the power and ability to make the laws of the state, "[t]he function of this court is to interpret the laws as they affect the 'life, liberty, or property of the citizens of the State.'" Kyllo, 535 NW2d at 901 (quoting Baatz, 426 NW2d at 303). The legislature does not act alone. This court exists to ensure that the constitutional rights of citizens are not infringed upon by acts of the legislature. It is not enough to say the legislature has the right to limit remedies; those restrictions must also be constitutional. "Although the legislature has the authority to limit available remedies, especially when they purport to reach state coffers, it is our responsibility to ensure access to the courts as guaranteed by our state constitution." Kyllo, 535 NW2d at 901. 
[Â¶27] "The legislature can impose reasonable restrictions upon available remedies and even upon these rights in accordance with the constitution, as long as they do not violate the constitution; but they cannot destroy these rights in violation of the constitution." Baatz, 426 NW2d at 304 (emphasis added). For these reasons, we hold that SDCL 21-3-11 violates South Dakota's open courts provision, SDConst Art VI, Â§20. {3} 
SDCL 21-3-11 violates due process. 
[Â¶28] Under South Dakota Constitution article VI, Â§2, "[n]o person shall be deprived of life, liberty or property without due process of law." People have a right to be free from injury. Swanson v. Ball, 67 SD 161, 290 NW 482 (1940). We apply a more stringent test than the federal courts' rational basis test. Katz v. Bd. of Med. & Osteopathic Exam. 432 NW2d 274, 278 n6 (SD 1988). The statute must "bear a real and substantial relation to the objects sought to be attained." Id. (citation omitted). 
[Â¶29] Ohio uses the same test. In Morris, 576 NE2d at 770-71, the Supreme Court of Ohio held that a medical malpractice damages cap was a violation of due process. A 1987 study by the Insurance Service Organization, which sets the rates of the insurance industry, found that the savings from various tort reforms including a damages cap were "marginal to nonexistent." Id. at 771. The court concluded that the cap was irrational and arbitrary and that it did "not bear a real and substantial relation to public health or welfare[.]" Id. 
[Â¶30] In Arneson, 270 NW2d at 136, the North Dakota Supreme Court examined whether a medical malpractice damages cap violated equal protection and due process under the North Dakota constitution: 

Defendants argue that there is a societal quid pro quo in that the loss of recovery potential to some malpractice victims is offset by "lower insurance premiums and lower medical care costs for all recipients of medical care." This quid pro quo [96 SDO 59] does not extend to the seriously injured medical malpractice victim and does not serve to bring the limited recovery provision within the rationale of the cases upholding the constitutionality of the Workmen's Compensation Act. 
Id. (quoting Wright, 347 NE2d at 742). See Carson, 424 A2d at 837-38 (quoting same passage from Wright, 347 NE2d at 742) (invalidating a damages cap based on equal protection because no quid pro quo was given).{4} The North Dakota Supreme Court held that the damages cap violated equal protection and due process.{5} Arneson, 270 NW2d at 135-36. In Lyons v. Lederle Laboratories, 440 NW2d 769, 771 (SD 1989), we discussed equal protection rather than due process and stated: "We fail to perceive any rational basis for assuming that medical malpractice claims will diminish simply by requiring that suits be instituted at an earlier date." The statute of limitations in Lyons, which carved out an exception for minors which did not allow tolling, created an arbitrary classification of those minors with medical malpractice claims versus other tort claims. Id. Likewise, SDCL 21-3-11 creates arbitrary classifications of medical malpractice claimants and of those claimants who sustain damages over $1 million and those who do not. Those who suffer less than $1 million in damages may be compensated fully while those who suffer more shall have their damages capped. 
[Â¶31] The arbitrary classification of malpractice claimants based on the amount of damages is not rationally related to the stated purpose of curbing medical malpractice claims. See Lyons, 440 NW2d at 773 (Sabers, J. concurring specially). The legislation was adopted as a result of "some perceived malpractice crisis." Id. at 771. Many courts and commentators have argued that there was no "crisis" at all.6. SDCL 21-3-11 was adopted as a result of recommendations by the 1975 South Dakota Legislature's Special Committee on Medical Malpractice. As noted by one commentator: 

Statements made by insurance representatives before the [Committee], referring to the low number of medical malpractice claims brought in the state, can only create significant doubt that South Dakota was experiencing a genuine insurance crisis at that time. Startling data on medical malpractice claims in South Dakota, North Dakota, and Minnesota, collected by the Minnesota Department of Commerce from 1982-1987 [the Hatch Study], also tends to call into question the basis for cries of any insurance crisis; if claim frequency and severity did not change significantly in those years, and if in those same six years only one-half of one percent of all medical malpractice plaintiffs were awarded any damages, why then did physicians' insurance premiums triple in that same time period? 
Eiesland, infra, at 703 (emphasis in original). 
The Hatch Study concluded that "[d]espite unchanging claim frequency and declining loss payments and loss expense, on average, physicians paid approximately triple the amount of premiums for malpractice insurance in 1987 than in 1982." Hatch Study, at 31. During that time period, there were three files where a company paid $1 million or more, and 15 files where a company paid equal to or greater than $500,000. Hatch Study, at 15-1{6} Gail Eiesland, note, [96 SDO 60] Miller v. Gilmore: The Constitutionality of South Dakota's Medical Malpractice Statute of Limitations, 38 SDLRev 672, 703 (1993); Hoem v. State, 756 P2d 780, 783 (Wyo 1988) (holding that medical malpractice tort reform violated equal protection under the rational basis standard). As noted by the court in Hoem: 

It cannot seriously be contended that the extension of special benefits to the medical profession and the imposition of an additional hurdle in the path of medical malpractice victims relate to the protection of the public health. 
756 P2d at 783. 
[Â¶32] In Moore, 592 So2d at 167-169, the court examined several studies to conclude that the connection between recovery caps and decreased malpractice insurance rates was "at best, indirect and remote." Id. at 168. The court balanced this remote connection against the "direct and concrete" burden on severely injured claimants. Id. at 169; see Carson, 424 A2d at 837 (It is "unfair and unreasonable to impose the burden of supporting the medical care industry solely upon those persons who are most severely injured and therefore most in need of compensation."). "[T]he statute operates to the advantage not only of negligent health care providers over other tortfeasors, but of those health care providers who are most irresponsible." Moore, 592 So2d at 169 (emphasis in original). 
[Â¶33] Before SDCL 21-3-11 was amended in 1986, the statute only capped general or noneconomic damages.{7} Now, the $1 million cap applies to all damages, noneconomic and economic. 1986 SDSessLaws ch 172. This record provides no reasons for amending the statute or making the cap apply to all damages. Therefore, even if the legislative record and findings were sufficient to support the existence of an insurance crisis and the reasonableness of the cap on noneconomic damages at $500,000, they would not support the reasonableness of placing a cap on all damages, economic and noneconomic, at $1 million. No justifiable reason appears to cap economic damages.{8} [96 SDO 61] 
[Â¶34] SDCL 21-3-11 does not treat each medical malpractice claimant uniformly. It divides claimants into two classes: those whose damages are less than $1 million and those whose damages exceed $1 million. Those who have awards below the statutory cap shall be fully compensated for their injury while those exceeding the cap are not. 
[Â¶35] Therefore, SDCL 21-3-11 does not bear a "real and substantial relation to the objects sought to be obtained" and we hold that the damages cap violates due process guaranteed by South Dakota Constitution article VI, Â§2. 
CONCLUSION 
[Â¶36] In this instance, if we assume that the economic damages are $2 million and the noneconomic damages are $1 million, it becomes clear that the statute is neither reasonable nor constitutional. The reasons are many, but the most basic is that the statute impermissibly gives all the benefits to the wrongdoer (his liability is limited to $1 million) while it places all the corresponding detriment on the negligently injured victim (his recovery, economic & noneconomic, is limited to $1 million). There is no quid pro quo or "commensurate benefit" here. Smith, 507 So2d at 1089; see Arneson, 270 NW2d at 136; Wright, 347 NE2d at 742; Carson, 424 A2d at 838; Jensen, supra, at 104. 
[Â¶37] Despite a claimed medical malpractice crisis in the rural areas of this state, this legislation wholly failed to differentiate between rural and urban problems and solutions. It purported to cover all practitioners of the healing arts, including chiropractors and dentists. There is no showing of a shortage of chiropractors or dentists. The statutes purported to cover the entire state even though there was no medical malpractice crisis in the urban areas such as Minnehaha and Pennington Counties, as opposed to the rural areas. 
[Â¶38] Even in this case, we are dealing with a United States Air Force hospital situated in Pennington County. There is no showing that any United States Air Force hospital had any difficulty obtaining and keeping practitioners of the healing arts. This legislation does not bear a real and substantial relation to the objects sought to be attained{9} and it violates many rights in the process. The fact that certain fringe benefits may result to the public in general is insufficient to save this statute. The same rationale applies to prior versions of the statute. Therefore, they violate the constitutional provisions stated herein. 
[Â¶39] We are not saying that the state cannot subsidize health practitioners or even the health insurance industry. We are simply saying that it cannot be done in this manner to the sole detriment of the injured. Obviously, fewer constitutional objections would exist if the state would pay the difference to the injured; or, before the fact, to the insurer or health care provider; or, in all personal injury actions, all damages, economic and noneconomic, were limited in reasonable proportions for all those wrongfully injured for the benefit of all wrongdoers. We decline to comment on the wisdom, as opposed to the constitutionality of such approach. 
[Â¶40] Question 2: Are Medical Service Specialists "practitioners of the healing arts" for purposes of SDCL 21-3-11? 
[Â¶41] In view of our holding that the damages cap of SDCL 21-3-11 is unconstitutional, it is not necessary to reach this question. Alternatively, the question would be moot upon the revival of the 1985 [96 SDO 62] version of SDCL 21-3-11 because this particular language was not added until the 1986 amendment. 
[Â¶42] Question 3: Does South Dakota law recognize emotional distress or loss of consortium for injuries to a minor child as a separate cause of action? 
[Â¶43] We have held that a parent may bring a cause of action to recover consequential damages incurred because of negligent injury to a child. Barger for Wares v. Cox, 372 NW2d 161, 164 (SD 1985). Furthermore, a parent may bring a cause of action for loss of companionship and society of a child under our wrongful death statute. Anderson v. Lale, 216 NW2d 152, 158-59 (SD 1974). We have never recognized a loss of consortium claim, however, on behalf of a parent because of injuries to a child. 
[Â¶44] Analogous to our rationale is the relationship between a husband and wife in comparison to a parent and child. In Barger, we cited with approval the language of Callies v. Reliance Laundry Co., 206 NW 198, 200 (Wis 1925), where it was stated: 

The parent is by law required to support and care for his child. In return for the performance of such obligation, the law gives to the parent the right to a part of the child's cause of action in case he is negligently injured by another. So also since the husband is required to support his wife the law likewise gives him a part of the wife's cause of action in case she is negligently injured by another. This splitting up of the cause of action resulting in some of the damages being given the child and some to the parent, or some to the wife and some to the husband, is due solely to the parental and marital relations existing between the parties.... But for such relations and obligations